THE MEXICAN NATIONAL RAILWAY COMPANY v. JAMES MUSSETTE.

No. 115.

## 1. Transfer of Cases to Courts of Civil Appeals.

While the amendments to the Constitution did not in terms direct the causes pending in Supreme Court to be transferred to Courts of Civil Appeals when organized, such was its effect; for the Supreme Court from that time was deprived of jurisdiction to decide them. and those courts alone were clothed with that power. The Legislature in organizing the Courts of Civil Appeals directed such transfer.......... ... 713

## 2. Same—Appeal Bonds.

In view of this legislation, there can be no doubt of the intention to give to Courts of Civil Appeals jurisdiction over causes pending in the Supreme Court when those courts were organized, and to authorize them to render judgments upon appeal and writ of error bonds previously filed in these cases ............. .................................. 713

## 3. Appeal Bonds.

All instruments creating obligations not based on agreement of parties, but upon statutes, such as appeal bonds, are made in view of and in subordination to the facts known to all, that the people may change the jurisdiction of existing courts. create others, and confer upon them such jurisdiction over cases arising before such legislation or then pending as may seem for the best interests of all; and it can not be held that the appeal and error bonds should become inoperative upon such changes; for the substance and spirit of such an undertaking is that the obligors will discharge the obligation fixed by their bond whenever the duty to discharge it by satisfying the obligation is declared by a court having jurisdiction over the cause on appeal, whether jurisdiction to determine the cause existed when the bond was given or was afterwards conferred ...................................... 714

## 4. Same.

What court should decide the cause on appeal was not a matter which parties could control by contract, for neither the one nor the other

could thus secure a right which would prevent change in the jurisdiction of courts, or the creation of new courts with jurisdiction before conferred on others................................................... 714

## 5. Appeal Bond—Statutory.
Appeal bonds are not based on consent of adverse litigants, but obligations are assumed by the makers which are permitted, and thereby right to appeal secured, under the provision of the laws.............. 714

## 6. Obligations of Contract.
The obligations which the Constitution of the United States and of this State protect are such as exist by reason of contract, which never exist without consent or agreement of parties, either express or implied; and consent or agreement can not be implied when the party in whose favor the obligation arises has no power to prevent it................. 715

## 7. Retroactive Laws—Remedies.
The amendment and laws under it prescribing the course to be taken in cases pending in the Supreme Court upon the organization of the Courts of Civil Appeals, while retroactive, are not inhibited, as they affect the remedy only and do not impose additional burdens......... 715

## 8. Appeal Bonds—Sureties.
The undertakings of the parties to the appeal bond must be read in the light of laws existing when the bond was executed, and in view of the further fact that parties must be held to have contracted with knowledge of the right of the people to so change the jurisdiction of the courts of the State as to require the appeal to be decided in a court or courts other than that having jurisdiction when the bond was executed .......................................................... 715

## 9. Appellate Court—Supreme Court.
That the words " Supreme Court" in the bond were intended to be used as the equivalents of the words " appellate court" used in the statute can not be doubted. Decisions have held the terms equivalent ...... 716

## 10. Sureties on Appeal Bond Bound.
The principal and sureties in the appeal bond when assuming such obligations, do so with intent that they shall be given effect, and must be understood to agree to comply with their undertakings whenever their obligation to do so is declared by a court having jurisdiction over the case appealed, whether the Supreme Court or the Court of Civil Appeals having jurisdiction of the case when decided................... 716

## 11. Negligence in Employing Engineer and His Acts—Charge.
In action by a railway conductor for damages for personal injuries, the specific acts of negligence relied upon were in employing and placing an unfit engineer in charge of an engine, and the negligence of the engineer in leaving his engine under the circumstances. See charge approved as to the care required of the railway, and of the facts to be proved by the employe in order to recover damages. It was necessary to prove carelessness in employment of the engineer, and that the act of the engineer was the proximate cause of the injury................ 718

## 12. Proximate Cause.
The question of proximate cause is usually one for the jury from the circumstances. In this case a train ascending a steep incline was halted. An engine was at front and rear of the train. That in front was detached and sent forward for assistance. The engineer at the rear, upon

the train halting, left his engine and went to the front. While absent the fireman, from accident or otherwise, set the engine in motion, and the train was moving down. The conductor, in trying to halt the train, was thrown off and injured. It was against the rules of the company for the engineer to leave his engine, and great care was necessary in making the ascent. *Held*, that under such facts there was ground for the jury finding that the injury to plaintiff resulted proximately from the engineer leaving his engine....................... 719

**13. Intervening Cause.**

An intervening cause which ordinarily might have been foreseen or anticipated will not excuse or prevent responsibility from an act of negligence. See example ........................................... 719

**14. Care in Employment of Engineer.**

It is the duty of a railway company to exercise diligence to ascertain the fitness of an engineer placed in a responsible position. Where knowledge of unfitness is brought to the master, a subsequent failure of a fellow servant to notify the company of such unfitness would not relieve from responsibility for the negligent acts of such engineer...... 720

ERROR to Court of Civil Appeals for Fourth District, in an appeal from Webb County.

*Nicholson, Dodd & Mullaly*, for appellant, cited:   Eams v. Railway, 63 Texas, 660; Rose v. Railway, 17 S. W. Rep., 789; Patt. on Ry. Acc., sec. 293; Railway v. McDaniels, 107 U. S., 454; Washington v. Railway, 10 Am. and Eng. Ry. Cases, 754; Ins. Co. v. Tweed, 7 Wall., 52; Pease v. Railway, 17 Am. and Eng. Ry. Cases, 529.

*Fisher & Townes*, for appellee. — On motion to dismiss the writ of error *for want of jurisdiction:* Under the law directing the transfer of this case to a Court of Civil Appeals—a court other than the one to which the appeal was prosecuted—the costs incurred in the Supreme Court and afterwards in the Court of Civil Appeals were adjudged against and are collectible from the sureties on the appeal bond conditioned to perform the judgment, etc., of the Supreme Court. The law thus authorizing the transfer to be made, and additional burdens to be imposed, changed, without their consent, the contract of the sureties, and thereafter they stood discharged, leaving the appeal without a bond to support it, the appellee without security, and the court without jurisdiction. Schuster v. Weis, 21 S. W. Rep., 438; Noffsing v. Harnett, 84 Mo., 540; Craner v. Reardon, 39 Mo. App., 307; Myers v. Parker, 6 Ohio St., 501; McKay v. Dodge, 5 Ala., 389; Brandt on Surety. and Guar., sec. 393; Miller v. Stewart, 9 Wheat., 681.

Neither by constitutional amendment nor by legislative enactment can the contract of the sureties be changed and additional burdens imposed without their consent; and the legislation of April 13, 1892, providing

for the transfer of pending cases from the Supreme Court to the Courts of Civil Appeals, and seeking to make bonds given to perfect and support appeals to the Supreme Court respond in satisfaction of judgment thereafter entered in such cases by the Courts of Civil Appeals, or in the Supreme Court if subsequently carried there under the new system, as to sureties on appeal or error bonds, is in conflict with the provision of the Constitution of the United States and of this State prohibiting the passage of laws impairing the obligation of a contract.   Const. U. S., sec. 10, art. 2; Const. Texas, secs. 16, 19, art. 2; 3 Am. and Eng. Encycl. of Law, sec. 12, p. 741; Id., cl. c., sec. 12, p. 751; Green v. Biddle, 8 Wheat., 84; Robinson v. Magee, 9 Cal., 81; 2 Black on Const. Pro., sec. 102; 2 Story on Const., sec. 1585.

While the appellant had no vested right to and in an appeal to the Supreme Court or other court, and the Legislature could deny or destroy the right of appeal or authorize it to be exercised by a tribunal other than the one before which it was pending when the law was changed, still the law making power could not change the contract of the sureties to the appeal bond and impair its obligation by imposing new burdens and requiring the sureties to perform the judgment of a tribunal other than the one they agreed to be bound by.   Sureties have the right to stand upon the very contract they have made, and any change made therein without their consent, and certainly if to their prejudice, will discharge them and destroy the bond as a bond.   Miller v. Stewart, 9 Wheat., 681; Schuster v. Weis, 21 S. W. Rep., 438; 84 Mo., 540; Railway v. Grant, 98 U. S., 398; 1 N. Y., 536; 7 Wall., 506; De Cordova v. Galveston, 4 Texas, 470; 3 Am. and Eng. Encycl. of Law, note bottom page 759; Id., top page 759, clause a.

*W. Showalter* and *Herbert Wolcott*, for appellee.—Brief on merits.

STAYTON, CHIEF JUSTICE.—This cause was appealed to the Supreme Court prior to the organization of Courts of Civil Appeals; and as was proper at the time, the appeal bond was conditioned as the law then required.

On organization of Courts of Civil Appeals, the cause, in accordance with the requirements of the law, was transferred for decision to the Court of Civil Appeals having jurisdiction of cases tried in the county in which it was.

The judgment of the District Court was affirmed by the proper Court of Civil Appeals, and on application this court granted a writ of error, under which the cause is now here.

Defendant in error moves to dismiss the writ of error, on the ground that the Court of Civil Appeals had not jurisdiction over the cause, because no bond had been executed conditioned as bonds are now required

to be to perfect appeals to a Court of Civil Appeals; from which it is argued that this court has not jurisdiction, because a Court of Civil Appeals had not jurisdiction to render a judgment from which writ of error would lie.

It is contended that this court ceased to have jurisdiction when Courts of Civil Appeals were organized, and that no Court of Civil Appeals could acquire jurisdiction without a new bond executed in compliance with the law applicable to bonds given in cases originally appealed to such court; and it is further urged, that the bond, executed in accordance with the law in force at the time, became inoperative for any purpose when courts of Civil Appeals were organized.

It is further contended, that " the law making power could not change the contract of the sureties to the appeal bond, and impair its obligation, by imposing new burdens and requiring the sureties to perform the judgment of a tribunal other than the one they agreed to be bound by; (that) sureties have the right to stand upon the very contract they have made, and any change therein made without their consent, and certainly if to their prejudice, will discharge them and destroy the bond as a bond."

Those propositions are asserted in the motion in many forms.

The appeal bond in question was executed after the amendments to the Constitution now in force were declared adopted, but before the organization of Courts of Civil Appeals which were required by that amendment to be organized.

At the time the appeal bond in question was executed, the statute required such bonds to be conditioned that principal and sureties, " in case the *judgment of the appellate court* shall be against him, that he shall perform its sentence, judgment, or decree, and pay all such damages as said court may award against him." Rev. Stats., art. 1404.

The bond was conditioned, " in case *the judgment of the Supreme Court* shall be against it,   *   *   *   it shall perform its judgment, sentence, or decree, and pay such damages as said court may award against it," etc.

This bond was sufficient at the time it was given; and had the cause been reached and disposed of by this court before Courts of Civil Appeals were organized, would have authorized judgment against principal and sureties in accordance with its terms.

The amendments to the Constitution, among other things, provided, that " Until the organization of the Courts of Civil Appeals and Criminal Appeals as herein provided for, the jurisdiction, power, and organization and location of the Supreme Court, the Court of Appeals, and the Commission of Appeals shall continue as they were before the adoption of this amendment." Const., art. 5, sec. 6.

After the organization of the Courts of Civil Appeals, the jurisdiction theretofore exercised by the Supreme Court was taken from it and conferred, in substance, on those courts.

While the amendments to the Constitution did not, in terms, direct the causes pending in the Supreme Court to be transferred to Courts of Civil Appeals when organized, such was its effect; for the Supreme Court from that time was deprived of jurisdiction to decide them, and these courts alone were clothed with that power.

So standing the jurisdiction of the courts, the Legislature directed that "All causes that may be pending in the Supreme Court of Texas when the Civil Courts of Appeals shall have been organized, shall be transferred by said Supreme Court to the Court of Civil Appeals to which it would be returnable under the law organizing such courts, and shall be decided under the same rule as obtained when any such appeal was perfected. * * * That all bonds and obligations theretofore given in said cause to abide the judgment, sentence, or decree of said court, or to pay the costs of said court, shall be deemed and held to apply to said Civil Court of Appeals as if hereafter given under the provisions of this act." Act April 13, 1892, sec. 4.

In providing for writs of error from this court to a Court of Civil Appeals, the statute declares, that " a certified copy of * * * the bond given in the lower court, if any," shall accompany the petition; and that " if plaintiff in error has given no bond, then the Supreme Court in granting the writ shall specify what bond shall be given, and the plaintiff in error shall file said bond in the trial court, to be approved by the clerk of said court, and a certified copy thereof shall be at once transmitted to the Supreme Court."

This is the only instance in which this court is required to have writ of error bond made.

If a party who prosecutes an appeal or writ of error to a Court of Civil Appeals executes bond for that purpose, on that bond he can prosecute writ of error to this court (Revised Statutes, article 1011b); and this court can render such a judgment in that case as the Court of Civil Appeals should have rendered, which may go against sureties as well as principal on appeal or writ of error bond.

In view of this legislation, there can be no doubt of intention to give to Courts of Civil Appeals jurisdiction over causes pending in Supreme Court when these courts were organized, and to authorize them to render judgments on appeal and writ of error bonds filed in these cases to take them to the Supreme Court, as fully as though such bonds were given to perfect appeals on writs of error to those courts.

It would be within the power of the Legislature to permit appeals and writs of error to be prosecuted in Courts of Civil Appeals, and writs of error to be prosecuted from those courts to the Supreme Court, without any bonds whatever; and under existing legislation it is clear that the Court of Civil Appeals had jurisdiction over this cause, and that this court has; for if the bond could not be enforced against principal and

sureties, the right to have adjudication by both courts, without other bond, is given by law.

To hold otherwise would be, in effect, to hold that litigants have power to deprive the State of power to regulate its judicial system and to fix the jurisdiction of its courts.

Those decisions which deny the liability of sureties on appeal bonds, when under a change in the law jurisdiction is given to a court other than that named in the bond or having jurisdiction when bond was executed, all concede the jurisdiction of the new or substituted court. In Re Garesche, 85 Mo., 469; Cranor v. Reardon, 39 Mo. App., 306; Schuster v. Weiss, 21 S. W. Rep., 438.

Some of those cases, however, held that in such cases sureties on appeal bonds are not liable.

These decisions are based on the general rule, that the contract of a surety is not to be extended by implication beyond its terms, but to construe such obligations in connection with laws in force when they are entered into, and in view of the fact that every person must know that the power of the people to change the jurisdiction of the courts of the State may be exercised at any time, and can not be controlled by contracts made or obligations assumed by individuals, does not violate that rule.

All instruments creating obligations not based on agreement of parties, but upon statutes, such as appeal bonds, are made in view of and in subordination to the fact, known to all, that the people may change the jurisdiction of existing courts, create others, and confer upon them such jurisdiction over cases arising before such legislation or then pending, as may seem for the best interests of all; and it ought not to be held that principal or surety to an appeal bond contemplated, in event of such change pending appeal, that their obligation should become inoperative; for the substance and spirit of such an undertaking is that the obligors will discharge the obligation fixed by their bond, whenever the duty to discharge it by satisfying the obligation is declared by a court having jurisdiction over the cause on appeal, whether jurisdiction to determine the cause existed when the bond was given or was afterwards conferred.

What court should decide the cause on appeal was not a matter which parties could control by contract, for neither the one nor the other could thus secure right which would prevent change in jurisdiction of courts, or creation of new courts with jurisdiction before conferred on others.

Some of the cases before referred to seem to hold that such obligations as sureties on appeal bonds assume are contracts within the constitutional safeguards which deny to State Legislatures power to pass laws whereby the obligation of contract will be impaired; but it seems to us such is not the character of such obligations, for they are not based on consent of adverse litigants, but are assumed by the makers of such bonds, which

are permitted, and thereby right to appeal secured under the provisions of positive law.

The assent of persons for whose protection such bonds are executed is not essential to obligation, and their dissent can have no effect on the right of adverse parties and their sureties to assume obligation by compliance with the statute.

Obligations which the Constitution of the United States and of this State protect from impairment are such as exist by reason of contract, which reason exists without consent or agreement of parties, either express or implied; and it can not be implied when the party in whose favor the obligation arises has no power to prevent it. Fletcher v. Peck, 6 Cranch, 136; Green v. Biddle, 8 Wheat., 92; Garrison v. City of New York, 21 Wall., 203; Lobrano v. Nelligan, 9 Wall., 296; Railway v. Nesbit, 10 How., 395.

It would not be contended that parties, by the execution of appeal bonds and other acts necessary to perfect an appeal, could acquire right to have their causes determined by courts then having jurisdiction over such appeals; for if such a right could be thus acquired, parties would have power to prevent the exercise by the people of a power recognized and secured by the Constitution.

None of the decisions assert such a proposition, but all concede that it can not be maintained when they admit that legislation is valid, as to parties to an action, which takes from a court jurisdiction to decide a case pending before it on appeal, and confers jurisdiction over it upon another court to which the case is required to be transferred.

That the laws in question are, in a restricted sense, retroactive is true; but as they affect only the remedy and deprive neither party of substantial right, they are not violative of the Constitution, unless they impose obligations not contemplated when the appeal bond was executed. It is clear that it was intended by the parts of the amendments to the Constitution and statutes before referred to, to confer upon Courts of Civil Appeals jurisdiction to hear and determine causes pending in the Supreme Court and undecided when those courts were organized, and to make parties to appeal bonds filed in such causes liable under judgments rendered by those courts, or by this court on writ of error, just as they would have been had the causes been decided by the Supreme Court before the organization of Courts of Civil Appeals; and the only question is whether under the law applicable to sureties they can be held so liable.

As before said, the undertaking of the parties to the appeal bond must be read in light of laws existing when the bond was executed, and in view of the further fact that parties must be held to have contracted with knowledge of the right of the people to so change the jurisdiction of the courts of the State as to require the appeal to be decided in court or courts other than that having jurisdiction when the bond was executed.

The law in force when bond was executed required it to be conditioned "that such appellant or plaintiff in error shall prosecute his appeal or writ of error with effect, and in case the *judgment of the appellate court* shall be against him, that he shall perform its judgment, sentence, or decree, and pay all such damages as said court may award against him." Under this statute bonds which used the words "Supreme Court" instead of the words "appellate court," and vice versa, were held sufficient; and if the words used in the statute had been inserted in the bond in question there can be no doubt that they would be held to embrace any court which might entertain jurisdiction of the cause on appeal, whether existing at the time bond was executed or subsequently created.

That the words "Supreme Court" used in the bond were intended to be used as the equivalents of the words "appellate court" used in the statute, can not be doubted.

The bond in question, however, was executed after all the parties to it knew that the Constitution had been so amended as to make it necessary that the cause should be decided by a Court of Civil Appeals if it was not decided by the Supreme Court before those courts were organized; and that they executed the bond in view of that fact, and in order to secure right to decision of the cause on appeal by any appellate court which might be given jurisdiction to decide, it ought not to be questioned.

We do not, however, wish to place the decision of the general question presented on the language of the statute in force when the bond was executed, nor upon the fact that the Constitution had been amended before that time, but upon the broader ground that principal and sureties, when assuming such obligations, do so with intent they shall be given effect, and must be understood to agree to comply with their undertakings when their obligation to do so is declared by a court having jurisdiction over the case appealed, whether that be the court named in the bond and having jurisdiction when it was executed, or a court subsequently clothed with such jurisdiction.

The Legislature has declared such to be their obligation, and there is no objection on constitutional grounds to such legislation; nor can it be said that any burden is thus placed upon sureties which was not fairly in contemplation when they voluntarily assumed the obligation.

The motion to dismiss writ of error will be overruled.

On the day of his injury defendant in error was conductor on a train belonging to plaintiff in error, en route to the City of Mexico. The train consisted of nineteen cars, and was composed of both freight and passenger cars, the latter having from eighty to one hundred passengers aboard.

The train being heavy, on reaching a steep mountain grade which extended about ten miles, it became necessary to place an extra engine at

the head of the train and another at the rear, in order to propel the train to the top of the mountain.

One Hobart was engineer in charge of the rear engine, which seems to have been a heavy and powerful engine, and with him was a Mexican fireman.

When the train had ascended the mountain about eight miles, one of the engines in front became disabled, and after causing the brakes to be set, the conductor went forward, cut off the front engines, and sent them to a station at the top of the grade for assistance.

Soon after the train was stopped the engineer in charge of the rear locomotive left it and came to the front of the train, leaving no person with his engine but the fireman, who knew nothing of its working or mechanism.

When that engineer reached the front of the train the conductor upbraided him for leaving his engine while on that grade, and directed him to return to it; but about that time the train began moving down the mountain, and it was observed that his engine was working and pulling the train after it.

The conductor at once commenced doubling the brakes, passing over the cars from one to another towards the rear, and while engaged in this was thrown from the train and injured, under such circumstances as to make the railway company liable to him if the engineer, Hobart, was an unsuitable man for the position in which he was placed, provided his absence from his engine was the proximate cause of the movement of the train down the grade.

There was evidence tending to show that Hobart was a reckless engineer, and unsuited to the place, and that of this the officers of the railway company were informed when he was last employed, over the protest of a train master, who gave information not only of his general reputation for carelessness, but of a wreck caused by him when formerly in employment of the company.

It was shown that great caution on the part of those managing the train while it was on the steep grade was necessary, and that the orders to engineers prohibited their leaving their engines, except at stations to receive orders.

It further appears, that some act of the fireman, during the absence of the engineer, put the engine in backward motion, after which a brakeman who was in the caboose climbed into the engine room and by reversing the engine and giving steam stopped the train; but this was not done until plaintiff was injured and two passengers killed.

The action was based on several acts of negligence charged against the company, but the charge of the court withdrew from the jury all of these except the negligence of the company in placing Hobart in charge of the engine and his negligence in leaving his engine under the circumstances.

The court clearly informed the jury what the issues in the case were, and as to the facts that would fix liability on the company or prevent a recovery by plaintiff.

With others, the court gave the following instructions:

"If the plaintiff has shown that the defendant failed to use ordinary care and diligence in employing the engineer who operated said pusher locomotive as is required under the charge above given, that he was a careless and reckless man, and that the injury complained of was occasioned as the direct or proximate result thereof, and that the same happened without the fault or contributory negligence of the plaintiff as herein after charged, this in law would be such negligence on the part of defendant as would render the company liable, and you should so find for the plaintiff. An injury is the proximate result of an act, when without the act the injury would not have been inflicted."

"It is for you to determine, from all the evidence before you, what was the proximate cause of the injury complained of; but unless you find that the defendant was negligent in employing the engineer Hobart, and that he was careless and reckless, and thereby caused or contributed to the injury complained of, without any fault on the part of plaintiff, then you will find for defendant."

It is urged that these charges authorized the jury to find for plaintiff if Hobart was a reckless, careless, and unsafe engineer, and employed by the company without the exercise of care to ascertain his fitness for the place, although the injury may not have resulted from his negligence. Neither of the charges seem fairly susceptible of the construction placed on them by counsel.

The first informed the jury that they should find for the plaintiff if without negligence on his part he received injuries which were the direct result of the engineer's carelessness, if the company failed to use ordinary care in employing him, if in fact he was unfit for the position.

Other parts of the charge informed the jury as to the risks assumed by employes, and as to the facts necessary to entitle an employe to recover for an injury resulting from the negligence of a coemploye.

The jury could not have understood that they were instructed to find for plaintiff if the company had failed to use due care in employing the engineer, even if he was careless and reckless, unless they believed from the evidence that plaintiff's injury was the direct result of his careless or reckless act.

The last charge above given places the matter beyond controversy; and the entire charge was such that the jury could not have placed that construction on it for which counsel contend.

It is true that the court gave a charge, asked by defendant, which if considered alone ought not to have been given; and from that counsel

contend that the jury must have placed that construction on charges complained of for which they now contend.

The charge given at request of defendant could not legitimately have been given such effect, and considered alone ought not to have been given, in view of the facts of the case.

It is contended that the negligence of the engineer in leaving his engine, under the circumstances, in charge of a fireman who knew nothing of its working or mechanism, contrary to the rules of the company, as matter of law was not the proximate cause of the injury, because the engine was put in motion by the fireman.

It frequently becomes difficult to determine the proximate cause of an injury; but it is ordinarily a question of fact to be determined by the court or jury trying a cause, whose finding will not be reversed on grounds purely theoretical.

The situation of the train when it was stopped on the mountain side was perilous, and the evidence clearly shows that the movement of the train might have been prevented or stopped after it began, if the engineer had been at his post, and thus the injury avoided; and we are of opinion that the negligence of the engineer, having supervision over the fireman as well as the locomotive thus situated, may be deemed the efficient cause of the injury, although the engine may have been put in motion by the fireman, either inadvertently or intentionally.

The rules of the company required the engineer to remain with his engine, evidently for the purpose of protecting it from the interference of the fireman or any other person, as well as to operate it as might become necessary for movement or safety of the train.

That the rules of the company required him to remain with his engine evidences the opinion of the officers of the company that the exercise of due care required his presence there for the safety of its property, of employes, and of passengers.

" The act of a third person intervening and contributing a condition necessary to the injurious effect of the original negligence will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not on the number of subsequent events and agencies which might arise. Whether in any given case the act charged was negligent, and whether the injury suffered was, within the relation of cause and effect, legally attributable to it, are questions for the jury." Lane v. Atlantic Works, 111 Mass., 139; Gonzales v. City of Galveston, 84 Texas, 3; Jones v. George, 61 Texas, 346; Railway v. McKinsey, 78 Texas, 298; Weick v. Lander, 75 Ill., 93.

The fireman may have been a competent person to discharge the duties for which he was employed; and if while in the discharge of those duties

a fellow servant had been injured by his negligence, the railway company would not have been liable; but he was not employed to operate or have charge of the engine, of the working and mechanism of which he was ignorant.

The engineer was employed for the latter purposes, and to emphasize his duty to care for his engine at all times, the rules of the company required him to remain with it when on the road and under steam, except at stations when necessary to leave to get orders.

Why did the rules of the company require this? The answer must be, in order to operate it when necessary, to care for it, and to prevent all other persons from interfering with it. Whether it ought to have been foreseen that an ignorant fireman might intentionally or inadvertently put it in motion, when under steam and situated as was it, if he left the post assigned to him by his employer, was a question for the jury.

An engine when under steam is too nearly a thing of life to be left in the hands of a person ignorant of its workings and mechanism, and if injury results from such negligence, even though there may have been one intervening act directly contributing to the injury, no court would be justified in holding, that in the ordinary course of events such intervention ought not to have been anticipated, or at least thought not unlikely to occur.

To have given the charges bearing on questions considered asked by the defendant, would have been to take the case from the jury, which ought not to have been done under the evidence.

It was the duty of the company to exercise diligence to ascertain the fitness of Hobart for the important and responsible position in which he was placed, and the failure of a fellow servant of the plaintiff to notify its officers of neglect on his part and of his unfitness for duty, after he was employed the second time over the protest of some of its officers, based on his former misconduct that led to his discharge, could not affect the right of plaintiff to recover, and the court did not err in refusing to give the charge asked upon that subject.

There is no error in the judgment of the District Court or of the Court of Civil Appeals, and they will be affirmed.

*Affirmed.*

Delivered May 24, 1894.