GEORGE P. MARCHAND v. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

Decided December 15, 1898.

**Negligence—Evidence of, Sufficient for Case to Go to Jury.**

Evidence that plaintiff was injured by a cow which was hurled against him by a railroad engine passing a station at a speed of thirty miles an hour, and that he was ignorant of its approach and of the presence of the cow on the track, with conflicting evidence as to ringing of the bell as the train approached, sufficiently raise an issue of negligence to require the case to be submitted to the jury.

APPEAL from Harris. Tried below before Hon. W. H. WILSON.

*Wheeler & Rhodes, Lewis Fisher,* and *Fisher, Sears & Sherwood,* for appellants.

*J. W. Terry,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—Appellant sued appellee to recover damages for injuries to his person inflicted as alleged by him through the negligence of defendant, appellee here, in the running of one of its trains through the town of Hitchcock on the night of the 19th of July, A. D. 1896, the petition charging, among other acts of alleged negligence, that the train was run at an excessive and dangerous rate of speed. The defendant answered by general denial, and in addition charged the plaintiff with contributory negligence. Upon trial of the cause, the jury under instructions from the court returned a verdict for the defendant, and judgment was rendered in accordance with the verdict, and a new trial being overruled, the plaintiff appealed to this court.

It is insisted by appellee that the court did not err in taking the case from the jury and directing a verdict for the defendant, first, because the evidence was insufficient to warrant a finding by the jury that the defendant was guilty of negligence charged against it, and second, if such negligence was established by the evidence, it was not the proximate cause of the plaintiff's injuries. Whether or not the act or the conduct of an individual in a given case is negligence, or whether or not

his negligence is the proximate cause of injury to another, are generally questions of fact to be determined by the jury, and they can be taken from the jury and decided by the court as matter of law only when the evidence is uncontroverted, and when there can be no contrariety of opinion among reasonable men as to the inference or conclusion to be drawn from it; or, as is said in Joske v Irvine, 91 Texas, 574, when the probative force of the evidence is sufficient to raise but a suspicion of the existence of the fact sought to be proved. If therefore the evidence in this case is more than a mere "scintilla," or in other words, if its probative force be such that from it a reasonable man might infer the existence of the facts sought to be proved by the plaintiff, the court invaded the province of the jury, and deprived the plaintiff of a right guaranteed him by the law in directing a verdict for the defendant. To determine, therefore, whether this instruction to the jury was or was not erroneous, we must look to the evidence. The case is substantially this: The defendant's road runs through Hitchcock, which is an unincorporated town with a population variously estimated from 200 to 500, and in this town the defendant maintains a depot; and over its track many trains, both freight and passenger, daily pass; and several of these trains pass through the town without stopping or checking their speed.

On the night of the 19th of July, 1896, between the hours of 8 and 9 o'clock, plaintiff, who was temporarily residing in Hitchcock, left his place of abode, which was on the south side of defendant's railway, and went to a store on the north side of the track to purchase tobacco; remaining but a short time at the store, he started for his home, returning by the same way he had gone; and this way led immediately by the defendant's depot, being a crossing over the railway constantly used with the knowledge of the defendant by the public. On arriving at the depot the plaintiff met one Keefer, an employe of defendant, and they engaged in conversation for a few minutes; the depot building is north of the railway and very near the track; the plaintiff was at the east end of the house, some twenty feet from the track, while talking with Keefer, and with his back to the track, when the latter, whose face was in the direction of the track, suddenly broke off the conversation and went towards the western end of the depot, but for what purpose plaintiff did not know; plaintiff then moved east from the depot building in a direction parallel with the tracks for the distance of about nine feet; and upon facing to the south, for the first time he heard the approach of the train coming from the north; and in a moment he was struck by the body of a cow, which was just then caught by the train and hurled to the distance of seventy-five feet; plaintiff was knocked senseless, many of his bones broken, and his injuries and sufferings were great. The train was running, at the time of the collision with the cow, at the rate of at least thirty miles an hour; it was the custom of this train not to stop at Hitchcock and not to check its speed; this was known to be the custom by the inhabitants, and many of them frequently congregated about the depot to witness its flight through the town; and

this fact was known to defendant; the plaintiff knew that a train would pass that night, did not know the hour, and was not expecting it when he was at the depot; he could not see it approaching from where he was standing, while talking to defendant's employe, Keefer; he did not see any cattle on or about the track at the time he was injured; did not know of the approach of the train until the instant before he was knocked down by the cow; he heard the rumbling of the train, but heard neither bell nor whistle. Whether the bell was being rung or not as the train passed through the town is a question about which the evidence is conflicting; as the train approached the town it gave the usual whistle, as testified to by several witnesses. On the same day on which plaintiff was injured, and previous to his injury, a cow and a mare and colt were struck in the town by trains of defendant; and this had been told plaintiff before he left his place of abode; the trains of defendant had run over cattle during the year within the limits of the town. Plaintiff did not look to see while at the depot whether or not there were cattle about there. The cow which was hurled against him attempted to cross the track from the south to the north at a point nearly on a line of the east wall of the depot; it was seen by the engineer of the train, when it was in about ten feet of the track, but he did not give the alarm whistle or attempt to check the speed of the train; he did not have time to put on the break; the cow, the engineer thought, was running; he was on the lookout and the fireman was ringing the bell at the time the cow was struck. It was shown that at that season of the year the cows left the prairie during the night to escape the mosquitos, and many of them were frequently found upon the railway within the town, and this fact was known and had been long known to the trainmen and other of defendant's servants; it was also shown that the defendant by postals had warned all persons from assembling at or loitering about the depot, unless called there by business. The track of the defendant, from a point three-quarters of a mile from Galveston Bay, was straight as far as Alvin, a town some twelve or fifteen miles north of Hitchcock; that there was no timber or other obstruction near the track, and that trains might be seen from the depot in the latter town, in either direction, for a long distance. It was admitted by the defendant that this train and some others were run daily through the town without checking their speed. This train ran over the main line of defendant company, and came from another State; and there was much testimony on the part of the appellee tending to show the necessity of not checking the speed on interstate trains while passing stations and towns not larger than Hitchcock; and it was shown by the testimony of several railroad men, experienced in operating trains, that it was the custom of all railways in moving their through trains to pass all stations and small towns without checking the train's rate of speed; and these witnesses expressed the opinion that this was indispensable for rapid transit between distant points.

In the above statement we have not, perhaps, given all the facts testi-

fied to; but the statement contains all the material evidence adduced by the plaintiff, and for the determination of the question under consideration it is unnecessary for us to look to other evidence than the plaintiff's; for the question before us is not, if a verdict had been rendered for the plaintiff, should the court in the exercise of its discretion, upon consideration of all the evidence, set aside the verdict and grant a new trial to the defendant? But the question is, was the court authorized to declare as matter of law that the plaintiff was without a cause of action, and, in effect, to tell the jury there was nothing for them to consider? Our opinion is that the instruction complained of was erroneous, and the case should have been tried by the jury. Vide Irvin v. Railway, and authorities there cited, 42 S. W. Rep., 661, and Washington v. Railway, 90 Texas, 321.

From the view we take of the case it is not necessary that we should discuss the cases cited in the able brief of counsel for appellee in support of his contentions that there was no evidence of negligence, nor was the killing of the cow, if negligent, the proximate cause of plaintiff's injury. We do not mean to intimate an opinion as to the merits of the plaintiff's case further than to declare that the evidence adduced by him upon the trial was such as to require the court to submit the cause to the jury for their determination upon the facts and the law. With this explanation of this opinion, we will briefly notice some of the cases relied on by appellee. It is insisted that the speed of the train in this case was not negligence; and the case of Wink v. Railway, 31 Southwestern Reporter, 326, decided by this court, is cited. It is true that this court did hold in that case that the speed of a train, when not in violation of a statute or an ordinance, was not of itself negligence. But this court has never decided that a high rate of speed combined with other facts might not, under some conditions, amount to negligence on the part of those operating the train.

The test for determining whether one act is the proximate cause of another, is correctly stated by counsel; the rule is simple, but it is often difficult of application to the facts of a particular case. The case cited from Pennsylvania (Weed v. Railway, 117 Pennsylvania), is in most of its features analogous to this, and the decision supports the contention of appellee; but the case of Railway v. Bingham, 38 Southwestern Reporter, is not analogous to this. In that case there was an intervening agency between the negligence of the defendant and the injury of the plaintiff, and thereby the causal connection was broken; while the cases of Jackson v. Railway, 90 Texas, 372; Washington v. Railway, 90 Texas, 314, and Mussett v. Railway, 86 Texas, 708, would seem to be authority for holding the negligent killing of the cow, if negligent, the proximate cause of the appellant's injuries. But as we have already said, we do not so hold, nor do we express opinion on that point; but we reverse the judgment because the court erred in instructing the jury to return a verdict for the defendant.

*Reversed and remanded.*