**TARRY WAREHOUSE & STORAGE CO.
v. DUVALL.**

No. 13366.

Court of Civil Appeals of Texas.  Fort
Worth.

May 1, 1936.

Rehearing Denied June 12, 1936.

Lightfoot & Robertson and Nelson Scurlock, all of Fort Worth, for appellant.

Julien C. Hyer and A. W. Christian, both of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

The Tarry Warehouse & Storage Company has appealed from a judgment in favor of T. F. Duvall for damages resulting from a collision between a trailer of defendant's truck and a trailer of plaintiff's truck at a point on state highway No. 2, south of the town of Rhome, outside any town or city, and about 12 miles north of the city of Fort Worth.

The collision occurred at about 11:30 p. m. on November 15, 1932. The weather was cold and dry. Plaintiff Duvall, assisted by his helper, Le Roy Price, was traveling in a northerly direction in his truck, to which was attached a trailer. The engine of his truck began missing, due to needed repairs of the gas lines, and to make the repairs he pulled his truck to the right and off the pavement of the highway, and, according to his testimony, as far as it would go without running into a ditch on the east side of the highway. The shoulder on that side where the truck pulled off was 7 feet wide. The trailer also stopped off the pavement with the exception of the left rear wheel, which stopped a foot or a foot and a half west of the east edge of the pavement. It was about 15 feet long and 6 feet wide. The west corner of the rear end of the trailer extended some 4 or 6 inches west of the rear wheel, leaving more than 15 feet of the pavement at that point open for traffic; the width of the pavement being 18 feet. There were two lights and a reflector on the rear of plaintiff's trailer that were burning brightly immediately prior to the collision.

Defendant's truck was also traveling north on the highway; it too was pulling a trailer and was driven by defendant's employee, Lon Pitts. The right front corner of that trailer collided with the west rear corner of plaintiff's trailer, and plaintiff, who was standing on the shoulder of the highway near the front of his trailer, was struck on the head by that trailer and knocked into a ditch on the east side of the highway.

The case was tried before a jury, to whom the court submitted the following definitions for their guidance in determining the special issues submitted:

" 'Ordinary care,' as that term is used in this charge, means that degree of care which an ordinarily prudent person would use under the same or similar circumstances."

" 'Negligence,' as that term is used in this charge, means the failure to exercise that degree of care and prudence which an ordinarily prudent person would use under the same or similar circumstances."

"By the term 'proximate cause,' as used in this charge, is meant the moving and efficient cause, without which the injury in question would not have happened. An act or omission becomes the proximate cause of an injury whenever such injury is the natural and probable consequence of the act or omission in question, and is one which ought to have been foreseen by a person of ordinary care and prudence in the light of the attending circumstances. It need not be the sole cause. It must be a concurring cause, which contributed to the production of the result in question, and but for which said result would not have occurred."

The jury found that immediately prior to the injury defendant's truck driver, Pitts, was driving the truck at a speed of 25 miles per hour, and in so doing he was guilty of negligence, which was a proximate cause

of the accident; immediately prior to the collision defendant's truck driver failed to keep a proper lookout ahead for plaintiff's truck, and in so doing was guilty of negligence, which was a proximate cause of the collision; just prior to the collision defendant's truck driver was blinded by the lights of an approaching vehicle, and, after he became so blinded, he continued to drive defendant's truck at the same rate of speed at which he was driving immediately before he became blinded, and in so doing was guilty of negligence, which was a proximate cause of the collision; just prior to the collision plaintiff parked his truck and trailer as near to the ditch on the right-hand side of the road as same could be parked, without driving it into the ditch on such right-hand side; he had a taillight burning on his truck at the time of the collision and a reflector attached to the rear end of his truck on the left side of same.

The jury assessed damages for personal injuries sustained by the plaintiff in the sum of $10,000 and $270.75 for the necessary cost of repairing plaintiff's truck.

All of the foregoing issues were duly tendered in plaintiff's pleadings.

The jury made further findings on defensive issues pleaded by defendant as follows: Immediately prior to the collision, plaintiff did not fail to keep a proper lookout for approaching vehicles; the action on the part of plaintiff, T. F. Duvall, in parking the truck and trailer so that a portion of the trailer remained upon the paved portion of the highway, was not a proximate cause of the collision; plaintiff parked his truck and trailer in order that there might be a clear and unobstructed width of not less than 15 feet on the side of the truck and trailer; the collision was not the result of an unavoidable accident; immediately before the accident plaintiff did not fail to have on the rear end of his trailer a red or yellow light, which was lighted and visible for a distance of 500 feet to the rear of the vehicle.

Appellant cites article 801(A) and article 827a, § 10, Vernon's Ann.Penal Code. The first article cited requires the operator of any vehicle upon any public highway to travel upon the right-hand side thereof, unless the road on the left-hand side is clear and unobstructed for a distance at least 50 yards ahead.

Section 10 of article 827a reads as follows:

"No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of any incorporated town or city, when it is possible to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction upon such highway. '

"Whenever any peace officer or license and weight inspector of the Department shall find a vehicle standing upon a highway in violation of the provisions of this section, he is hereby authorized to move such vehicle or require the driver or person in charge of such vehicle to move such vehicle to a position permitted under this section."

By different assignments of error, appellant insists that the parking of plaintiff's trailer partially on the highway, as noted above, was a violation of that Penal Code and therefore constituted contributory negligence as a matter of law, which precluded plaintiff's right of recovery.

The first statute is cited to show that defendant's truck driver was driving on the right side of the pavement as required.

A companion case to this was Tarry Warehouse & Storage Co. v. Price, reported in (Tex.Civ.App.) 76 S.W.(2d) 162. That was a suit by Price against the same defendant on substantially the same facts, the only material difference being that Price was plaintiff's helper while plaintiff himself was engaged in operating the truck. The evidence introduced in that case was substantially the same as in the present suit, and it was determined by this court in that case that the fact that the trailer to plaintiff's truck was partially on the pavement did not constitute negligence, as a matter of law, as being in violation of section 10 of article 827a of the Penal Code, but whether or not it was negligence was to be determined by the rules of the common law. We adhere to the

conclusion reached in that case as applicable in the present suit.

Upon the trial, the defendant excepted to the court's definition of "proximate cause" because "it is vague and indefinite and does not instruct the jury that there must be a continuous sequence between the cause and effect, and ·that there must be no intervention of a new and independent cause."

It is insisted that the blinding of defendant's truck driver by the headlight of an approaching vehicle, as found by the jury in connection with the testimony of the driver that, until that vehicle passed, the driver had not seen plaintiff's truck, and, when he did discover it after the approaching vehicle had passed him, he was then right on plaintiff's truck, called for a definition of what would constitute a new and independent cause in connection with the definition given of "proximate cause" in the court's charge.

Many decisions are cited by both parties discussing the question of "proximate cause" and "new and independent cause" of an accident—some holding that the facts developed on the trial of cases under review required a definition of "new and independent cause" to be given in connection with the approved definition of "proximate cause"; others holding that, under the evidence introduced in those cases, the court was not required to include the definition of "new and independent cause" in a correct general definition of "proximate cause."

We deem it unnecessary to review the facts involved in those decisions because they all cite the leading case of Texas & Pacific Railway Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, 163, and recognize that what was said by Chief Justice Gaines in that decision is controlling.

In order to fully understand the rule laid down in the Bigham Case, we shall quote at length therefrom as follows:

"This suit was brought by defendant in error against the plaintiff in error to recover damages for personal injuries, and for injuries to cattle belonging to him, alleged to have resulted from a defective gate to a stock pen of the company. He recovered a judgment in the trial court upon both causes of action, which was affirmed by the Court of Civil Appeals [36 S.W. 1111].

"The facts upon which the recovery was claimed are thus stated by the Court of Civil Appeals in their findings: 'On November 25, 1892, the appellee, in accordance with a prearrangement made with the agent of the appellant, a common carrier, for the shipment of his cattle from Merkel to Waxahachie, Texas, had penned the cattle, about 100 head, in the stock pens of the appellant provided by it for that purpose. The gate which admitted entrance into the pen was out of repair, and had been for some months, as the appellant knew. The appliances for fastening it were defective. Its condition was due to the negligence of the defendant company.

" 'In order to prevent the escape of the cattle intended for shipment, the appellee was in the act of fastening it by means of a rope which he had secured for that purpose, when the noise of a passing freight train so frightened the cattle as to reduce them to a condition of panic. They plunged towards the gate, and upon it, the one upon the top of the other; and, before the appellee could escape, they hurled him some twenty feet upon the ground, where he fell unconscious from the violence of the contact. * * * But for the defective condition of the gate, the cattle would not have escaped.' * * *

"The maxim that, 'in law, the immediate, and not the remote, cause of any event, is regarded,' applies to cases of negligence. The negligence must be the proximate cause of the injury. But the word 'proximate' is not happily used in that connection. In ordinary language, a proximate cause is the nearest cause; but, *in a legal sense,* an act of negligence may be deemed a *proximate cause of an injury, although it may not be the last cause* in a connected succession of events which have led to a result. It is usually laid down, in cases of negligence, that, in order to constitute the proximate cause of an injury, the injury must be the natural and probable result of the negligent act or omission. Since every event is the result of a natural law, we apprehend the meaning is that the injury should be such as may probably happen as a consequence of the negligence, under the ordinary operation of natural laws. The rule is sometimes put upon the ground that to allow a recovery for injuries resulting from remote causes would lead to intolerable litigation, and this seems to be indicated in Bacon's paraphrase of

the maxim quoted above: 'It were infinite for the law to consider the causes of causes, and their impulsions one of another. Therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking for any further degree.' But it seems to us that as applied to the law of negligence, at least, a better ground for the rule is that a party should not be held responsible for the consequences of an act which ought not reasonably to have been foreseen. In other words, it ought not to be deemed negligent to do or to fail to do an act when it was not anticipated, and should not have been anticipated, that it would result in injury to any one. To require this is to demand of human nature a degree of care incompatible with the prosecutions of the ordinary avocations of life. It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed. * * *

"In Mexican Nat. Railway Co. v. Mussette, 86 Tex. 708, 26 S.W. 1075 [24 L.R.A. 642], Chief Justice Stayton quotes with approval from Lane v. Atlantic Works, 111 Mass. [136], 139, as follows: 'The test is to be found in the probable injurious consequences which were to be anticipated, not on the number of subsequent events and agencies which might arise.'

"In discussing this question, the supreme court of the United States say: 'The primary cause may be the proximate cause of disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved on a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place (2 W. Bl. 892). The question always is, was there an unbroken connection? Would the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or

wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.' Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U.S. 469 [24 L.Ed. 256]. This is probably as *accurate a statement of the doctrine as can be given,* and *is substantially that generally laid down by the authorities.* * * *

"But we are not prepared to hold that in no case can the original cause of the injury be deemed the proximate cause, where an *independent* and *disconnected* agency has supervened and brought about the result. The fact of the *intervention of an independent agency,* it occurs to us, bears more directly upon the question *whether the injury ought, under all the circumstances, to have been foreseen; and, where this latter fact appears, we think that the original negligent act ought to be deemed actionable.* In Seale v. Railway Company, 65 Tex. 274 [57 Am.Rep. 602], Chief Justice Willie says: 'If the intervening cause and its probable or reasonable consequences, be such as could reasonably have been anticipated by the original wrongdoer, the current of authority seems to be that the connection is not broken.' It follows that, in our opinion, the question of *probable cause ought to depend upon the further question whether a reasonably prudent man, in view of all the facts, would have anticipated the result,—not necessarily the precise actual injury, but some like injury, produced by similar intervening agencies.*

"But we are of the opinion that, when we come to apply the doctrine to the facts of the present case, all difficulty vanishes. We will first discuss the case with reference to the injuries to the plaintiff's person. Let us ask the question which was propounded in Milwaukee & St. P. Ry. Co. v. Kellogg, above cited: 'Was there an unbroken connection between the wrongful act and the injury,—a continuous operation?' We think not. But for the defective fastening to the gate, the injury could not have happened. Hence the alleged negligence of the defendant brought about the condition that rendered the accident possible. The active cause which produced the injury was wholly independent of the negligence of the defendant, and wholly disconnected from it.

"Ought the agents of the company to have *foreseen that, as a result of the imperfect fastening of the gate, the injury, or any injuries similar in character, would probably result?* In our opinion, nothing short of prophetic ken could have antici-

pated the happening of the combination of events which resulted in the injury of the person of the plaintiff." (Italics ours.)

■■ According to the test so announced by Judge Gaines in that case, we believe it follows logically that, if the intervening event following the original act of negligence in regular and unbroken succession should reasonably have been anticipated as a probable consequence of such negligence, then it will .not constitute an *"independent and disconnected agency."* And whether or not "there was an unbroken connection between the wrongful act and the injury— a continuous operation," as alleged, was a question for determination by the court in the first instance. Phœnix Refining Co. v. Tips, 125 Tex. 69, 81 S.W.(2d) 60, opinion by Justice Critz.

■■ There was an unbroken connection between the acts of negligence found by the jury and the personal injuries sustained by the plaintiff and the damages done to his car. The headlight of the approaching vehicle which blinded defendant's truck driver was one of the intervening events which the truck driver was bound to anticipate, since the statute requires such a headlight when a car is being driven at night and since it is a matter of common knowledge that they are so equipped. Hence it cannot be said that the use of the headlights by the passing car, causing the temporary blinding of the truck driver, was a disconnected independent agency, intervening between defendant's negligence and the injury, any more so than the darkness of the night which necessitated the headlights and but for which the truck driver undoubtedly would have seen plaintiff's truck in ample time to avoid the collision. And manifestly the headlight could not have been an intervening agency between the negligence of the truck driver, found by the jury, after he had passed it, or in failing to slow down his speed when he first discovered its approach. Furthermore, appellant's objection to the definition of proximate cause, given by the court, because it did not include the element of new. and independent agency, failed to point out that limitation.

The evidence was ample to · support a finding that defendant's truck driver should have anticipated some such injury as that sustained by the 'plaintiff as the result of his negligence as found by the jury: See, also, Tex.Jur., vol. 30, pp. 710 to 720, in-

clusive, for an extended discussion of the subject of "new" or "independent" causes in negligence cases, and numérous authorities there cited.

■ Accordingly, we overrule the assignment of error addressed to the failure of the court to include in the definition of "proximate cause" an instruction covering the question of "new and independent cause."

There is no merit in further assignments of error to the action of the court in sustaining plaintiff's special exceptions to defendant's pleading of contributory negligence on the part of plaintiff's helper Price in failing to notify him that the trailer of the truck had been stopped with the left rear wheel partially on the pavement, upon the theory that such negligence of Price would be chargeable to plaintiff as contributory negligence precluding a recovery, since the testimony of plaintiff showed he made that discovery as soon as he stopped, and the jury found he was not guilty of contributory negligence in failing then to move the trailer further over.

■ Since the evidence and findings of the jury all were to the effect that the plaintiff's truck was equipped with a taillight and reflector at the time of the accident, it cannot be said that he was in duty bound also to keep continuously sounding his horn as a further warning to approaching traffic, especially so since the statute regulating traffic on the public highway requires such a taillight, but does not impose the duty to also keep the horn sounding. Accordingly, there is no merit in the assignment of error to the order of the court sustaining the exception to the appellant's allegation of negligence in failing to sound the horn.

■ Nor do we believe that the evidence introduced on the hearing of defendant's motion for new trial by the trial court showed misconduct of the jury, as insisted by other assignments. The testimony of one of the jurors was to the effect that a little something was mentioned about the fact that probably the defendant carried accident insurance. Immediately thereafter another juror spoke up and said not to consider that, but to drop it and think no more about it. Witness did not remember the name of the juror, nor could he remember just when that subject was mentioned. Two other jurors testified to hearing the same remark, but the testimony

of all three of those jurors showed that the remark was made only in a casual way and was then dropped as being improper for consideration, and several jurors did not hear the remark at all. Under such testimony it cannot be said that the remark was reasonably calculated to, and probably did, operate to the prejudice of appellant. Bradley v. Texas & Pacific Ry. Co. (Tex. Com.App.) 1 S.W.(2d) 861; Wolfe & Co. v. St. L. S. W. Ry. (Tex.Civ.App.) 144 S. W. 347 (writ dismissed); Houston, E. & W. T. Ry. v. Hough (Tex.Civ.App.) 260 S.W. 233 (writ dismissed); Parks v. M. K. & T. Ry. (Tex.Civ.App.) 19 S.W.(2d) 373; 31 Tex.Jur. p. 45.

█ While the amount of damages allowed for personal injuries sustained by plaintiff is perhaps larger than we would be inclined to allow if it was within our jurisdiction to determine that issue in the first instance, yet, in view of the evidence which we have reviewed, we are unable to say that it was so excessive as to require a reversal of the judgment. Testimony of several witnesses introduced by plaintiff showed that he sustained an injury to his head and right wrist from which he has not fully recovered and which impaired his ability to earn a livelihood and by reason of which he had done no work since his injury and is unable to sleep at night without the use of aspirin. And the testimony of Dr. Lyle, in connection with that of plaintiff's wife and other witnesses who were well acquainted with plaintiff, tended to show that plaintiff's injuries were of a permanent character.

All assignments of error are overruled, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

█ Appellant complains that, in discussing their assignment to the order sustaining plaintiff's special exception to defendant's plea of contributory negligence of Le Roy Price, who accompanied plaintiff at the time of the accident, we omitted some of the material allegations of that plea. The substance of those allegations were that immediately after plaintiff stopped his car "Le Roy Price, a colored man who was the servant and employee of plaintiff," got out of plaintiff's truck and, after discovering that the truck was not entirely off the pavement and was therefore in danger of being struck by a passing vehicle, negligently failed to notify plaintiff, and that he was in position to see defendant's truck approaching and was guilty of negligence in failing to warn the driver of defendant's truck of the dangerous position of plaintiff's truck. However, there was no allegation that it was within the scope of the duties of Price, as plaintiff's employee, to give such warning to him or to the other vehicles approaching. Furthermore, the evidence showed without contradiction that Price was employed merely as plaintiff's helper; and, at the time of the accident, in obedience to plaintiff's instructions, was engaged in switching on another gas tank, and therefore was not in position to give warning to approaching vehicles; also that plaintiff was himself the driver of his truck, and as soon as it was stopped he discovered its exact position and all the dangers, if any, incident thereto which could have been 'acquired through Price as his employee. It therefore appears that the error, if any, in sustaining the exception to that pleading, was merely an irregularity resulting in no harm to defendant, and therefore shows no ground for reversal. 3 Tex.Jur. § 878, p. 1254.

It is earnestly insisted that the conclusion reached on original hearing, to the effect that the court did not err in failing to include in the definition of proximate cause the element of new and independent cause, is in conflict with the opinion of Judge Critz in Phœnix Refining Co. v. Tips, 125 Tex. 69, 81 S.W.(2d) 60, 61. In the first place, the positions of parties in that case were the reverse of positions of parties in this, in that the driver of the parked truck was the defendant, while in this case he was plaintiff. In that case the court failed to give any instruction on proximate cause. We quote the following from the opinion:

"When we come to examine the record in this case, we find that there is evidence therein tending to show that this truck was forced to stop and park on account of a flat tire; that this accident occurred in the night while the truck was parked on the side of the road; that at the point where the truck was parked the road was straight for a quarter of a mile in one direction, and a half mile in the other; that the truck was so parked that there was ample room for other vehicles to pass, and many such did pass going in both directions; that at the time this collision occurred this truck had two rear and two front lights burning; that at a point of

from one hundred to two hundred feet from this truck Tips passed another car going in the opposite direction with its lights burning; that Tips was traveling about 35 miles an hour when he passed the other car; that in passing the other car at the rate of 35 miles per hour he was violating the law as it then existed (the legal rate of speed in passing another car was then 15 miles per hour); that the lights of the other car might have had a tendency to impair Tips' vision; that just a few seconds after passing the other car Tips' car collided with this truck with resultant injuries to himself and his car. * * *

"We think a mere statement of the rules of law involved in the question of proximate cause as applied to the evidence we have detailed demonstrates that the trial court should have stayed in the beaten path in submitting the issue of proximate cause. This is evident because had he done so the defendant could have requested a charge or charges defining the term. As it was he was denied this right.

"Also the evidence we have detailed shows that in defining 'proximate cause' it would have been necessary to use the phrase 'new and independent cause,' or a phrase of similar import, and this being true, defendant would have been entitled to a charge defining 'new and independent cause.' He was deprived of this by the way the case was submitted. New and independent cause was in the case because of the circumstance of Tips passing the other car just before the collision with the events attendant upon such passing.

"Also the question of whether the Refining Company ought to have foreseen the accident and its resultant injuries was raised by the evidence in this record. The charge as submitted was calculated to eliminate such question."

■ Apparently, the passing of the other car by plaintiff Tips at a negligent rate of speed was what the court held to be a new and independent cause, which the jury might have found was not foreseeable by the defendant in that case. That was manifestly correct, since, as a general rule, one is not in duty bound to foresee that another probably may do a negligent act.

In the case at bar, the contention is made that the blinding of defendant's truck driver by the headlights of an approaching vehicle was sufficient to constitute a new and independent cause and requiring the inclusion of that term in the definition of proximate cause.

■ In the first place, the defendant's objection to the charge was insufficient in failing to point out the particular fact relied on as showing a new and independent cause. Following is the objection: "The defendant excepts to the Court's definition of 'proximate cause' because it is vague and indefinite and does not instruct the jury that there must be a continuous sequence between the cause and the effect, and that there must be no intervention of any new and independent cause. The defendant further excepts to the definition because the Court has failed to define the term 'moving and efficient cause' as used in the language of the Court defining 'proximate cause.'"

As pointed out in our original opinion, the law requires headlights on cars traveling at night; and blinding of vision therefrom must necessarily be anticipated in the regular course of travel. At all events, the blinding of the driver of defendant's truck by the headlights of the approaching vehicle could not be a new and independent cause of his negligence in failing to slow down his speed when he saw the car approaching, as found by the jury, nor of his negligence after he had passed those lights as the jury further found.

■ And in this connection we deem it not improper to suggest that, if the evidence is such as to require a finding by the jury as to whether or not there was a new and independent cause intervening between the defendant's negligence and the injury complained of, then a better practice would be to point out the particular event relied on to show a new and independent cause in separate special issues, with an instruction to the jury to find whether or not it occurred, and, if so, whether or not it constituted a new and independent cause which should have been foreseen by a person of ordinary diligence in the position of defendant or his agent in charge, rather than leave the jury to determine at their discretion just which of the intervening events constituted a new and independent cause and leaving the court to surmise as to their finding on that issue.

Motion for rehearing is overruled.