TRAVELERS INSURANCE COMPANY v. MRS. ADDIE J. HUNTER.

Decided November 24, 1902.

**1.—Accident Insurance—Evidence.**

The fact that a physician who attended the insured testified a year and a half thereafter that he did not remember whether the insured told him he had received an accidental injury, does not, as matter of law, preclude the court and jury from inferring from all the facts in the case that an accidental injury had occurred.

**2.—Same—Disease Causing Death.**

A recovery can be had for death under an accident policy insuring against death resulting from bodily injuries effected through accidental means independently of all other causes, where the accidental injury produces rheumatism, and this causes the death.

**3.—Same—Evidence Establishing Injury.**

Evidence held to warrant a finding that an accidental injury occurred, from external and violent means, and, independently of all other causes, resulted in and caused the death of the insured.

**4.—Same—Motion to Withdraw Evidence—Practice in Trial Court.**

A motion to withdraw all that part of the evidence of certain witnesses to the effect that the insured told them that the injury was accidental, was properly overruled as being too general, and for failure to set out the particular testimony sought to be withdrawn.

**5.—Same—Deposition—Objection.**

Where objection was made to an answer in a deposition seeking to show an accidental injury to the insured, on the ground that it disclosed that all the testimony of the witness was predicated on declarations made to him by the deceased long after the injury, the court properly excluded all that part of the answer which was hearsay, and admitted the part based exclusively on the personal knowledge of the witness.

**6.—Same—Question Not Assuming Fact of Injury.**

Where in an action on an accident policy a witness was asked if he knew H., the insured, who met with an accidental injury at a certain time and place, and if so, how long, an objection thereto on the ground that the question assumed the happening of an accidental injury was properly overruled, as the jury must have understood the reference to the injury as intended merely to identify the party.

Appeal from the District Court of Dallas County. Tried below before Hon. Richard Morgan.

*Bomar & Bomar*, for appellant.

*Alexander & Thompson*, for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was filed in the District Court of Dallas County, Texas, on the 8th day of December, 1900, by Mrs. Addie J. Hunter against the Travelers Insurance Company on an accident insurance policy issued by said defendant to W. Hugh Hunter for the sum of $5000 and payable to his wife, Mrs. Addie J. Hunter. The provisions of said policy are as follows: "In consideration of the warranties in the application for the policy and of twenty-five dollars, does hereby insure W. Hugh Hunter for the term of twelve

months from noon of May 28, 1898, in the sum of twenty-five dollars per week, against loss of time, not exceeding fifty-two consecutive weeks, resulting from bodily injuries effected during the term of this insurance, through external, violent, and accidental means which shall, independently of all other causes, immediately and wholly disable him from transacting any and every kind of business pertaining to his occupation, or if death results from such injuries alone within ninety days, will pay five thousand dollars to Addie J. Hunter, his wife. This insurance shall not cover injuries of which there is no visible mark on the body, the body itself in case of death not to be deemed such mark, nor accident, nor injuries, nor disability, nor death, nor loss of limb, resulting wholly or partly, directly or indirectly, from intoxication or while intoxicated, from disease or while affected thereby."

Said policy was continued in force by renewal receipts up until November 10, 1899, being the day on which the alleged accident occurred. It is alleged that W. Hugh Hunter was accidentally injured on November 10, 1899, from which he died on January 17, 1900. It is alleged that the accident happened to W. Hugh Hunter while alighting from a vehicle in which he was going from place to place, and that the horse unexpectedly started forward, causing the said Hunter to lose his balance and to fall accidentally, and in falling he caught the vehicle with one hand and lighted on the ground with one foot, and in the movement of the horse forward the said W. Hugh Hunter was bruised; sprained and wrenched his arm, wrist, foot, leg, shoulder, and body. That as a result of the said accident the said Hunter died.

Defendant plead general demurrer and general denial, and specially plead that in the application for the policy the following statements were made, to wit: "I have never had nor am I subject to fits, diseases of the brain, or any bodily or mental infirmity, and I agree that the policy shall not cover any injury through or while under the influence of intoxicating drinks." Said application specially warranted the statements made therein to be true. The policy further specially provided that: "This insurance shall not cover injuries of which there is no visible mark on the body, nor accident, nor injuries, nor disability, nor death, resulting wholly or partly, directly or indirectly, from intoxication, or while intoxicated, from disease or while affected thereby." That if said Hunter received any accidental injuries while said policy was in force the same were received while the said Hunter was under the influence of intoxicating drinks. That the statement contained in said application to the effect that applicant had never had any bodily infirmity, which was warranted to be true, was not in fact true in this, that at and before making the said application the said Hunter had been afflicted with an eczema or running sore on the arm, and had more than once been afflicted with rheumatism and had rheumatic tendencies.

The trial of the cause before a jury resulted in a verdict and judgment for plaintiff for the amount sued for. and a motion for new trial

was duly made and overruled, appeal bond and assignments of error duly filed, and appellant here presents its appeal.

*Opinion.*—1. Under appellant's first assignment of error the following proposition is presented: "Where one sends for a doctor to treat him and the doctor comes and finds him suffering from swollen limbs and treats him for rheumatism, and there is nothing said to the doctor about the sufferer having received an accident, the jury should not be allowed to infer that the swollen limbs were caused by an accident." W. Hugh Hunter was a special agent of the Georgia Home Insurance Company. He resided with his family at Dallas. During the first part of November, 1899, and prior to the 10th day thereof, he visited San Antonio on business for his company. He attended to his duties as usual up to the 10th of November. On November 10th he was confined to his room at the hotel where he was stopping, and was suffering from a badly swollen and inflamed arm and shoulder, and from a swollen ankle. He requested the local agent of his company to send him a physician, and in obedience to such request the agent notified Dr. Wilson. Dr. Wilson called on November 13th and found Mr. Hunter's wrist and ankle badly swollen. He treated him for inflammation of the wrist and ankle joints. Dr. Wilson supposed at the time that the trouble was rheumatic arthritis. At the time Dr. Wilson testified in the case, which was by deposition taken February 25, 1901, he stated that he did not remember that W. Hugh Hunter told him that he had received an accidental injury. The fact that Dr. Wilson did not, at the time he testified in the case, remember whether Mr. Hunter told him that he had received an accidental injury did not, as a matter of law, preclude the court and jury from inferring, from all the facts adduced in the case, that an accident and injury had occurred. This evidence was of a negative character, and it had been more than a year and six months when the deposition of Dr. Wilson was taken since he treated Mr. Hunter. Had Mr. Hunter actually failed to make known to his physician the fact that an accident had occurred to him, such failure would not estop plaintiff from showing (if such was the case) that, in fact, Hunter's condition was the result of an accidental injury. It is further insisted that Hunter came to his death from heart trouble, and that the heart trouble resulted from rheumatism, which is an independent disease, and the cause of death independent of an accident, and that the contract sued on simply meant to cover death caused by an accident independent of any disease. The evidence discloses that the injury produced rheumatism and that the heart trouble followed therefrom and death from heart trouble. If the rheumatism which produced the death of Hunter was not caused by an accidental injury then the company is not liable, but if such rheumatism was caused by the accidental injury and was but a mere link in the chain of causation between the accident and death, then the death is attributable not to the disease, but to the accident alone. As stated in the case of Freeman v. Mutual

Accident Association, 156 Massachusetts, 351, 30 Northeastern Reporter, 1013, cited and relied upon by the appellant, "an injury which might naturally produce death in a person of certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different, and this is so as well when death comes through the medium of a disease directly induced by the injury as when the injury immediately interrupts the vital processes." If at the time of the injury to Hunter he did not have rheumatism, yet, owing to the condition of his health or his temperament, rheumatism was produced by the injury, and as a result death followed, the company would be liable. Freeman v. Association, 156 Mass., 351, 30 N. E. Rep., 1013; Association v. Shryock, 74 N. W. Rep., 607; Association v. Smith, 29 C. C. A., 223-229, 85 Fed. Rep., 401; Insurance Co. v. Thomas, 17 S. W. Rep., 275; Association v. Barry, 131 U. S., 100-123.

On the 16th of November Mr. Hunter was removed to his home in Dallas, where he was treated by Dr. Thatcher, who for five years prior to that time had been his family physician. Dr. Thatcher testified that Hunter had some swelling and fever, a swollen condition in one of his wrists, and a slight swelling and inflammation in one of his ankles at the time he first called on him in November. Dr. Thatcher stated that the condition in which he found Mr. Hunter could have been produced by an injury whereby his right ankle and wrist had been wrenched and sprained severely. He gave it as his opinion that the injury described was the ultimate caues of Hunter's death. He testified that Mr. Hunter never suffered from rheumatism, to his knowledge, prior to his last sickness. He was confined to his bed until January 17th, when he died. Plaintiff testified that she had never known Mr. Hunter to suffer from rheumatism. She had been married to him twenty-eight years. A. L. Lowery, an agent of the insurance company, testified that as such agent he received notice from Hunter in his lifetime of a claim for benefits under the policy by reason of an accident and injury alleged to have been received by him in November, 1899. Death proofs were furnished in May, 1900. Thereafter the agent of the defendant company examined into the loss and offered to pay plaintiff a weekly indemnity of $25 per week for the time lost by Mr. Hunter up to the time of his death. This offer was declined by the plaintiff, she demanding the full face of the policy. There was evidence that W. Hugh Hunter had been regularly attending to his duties as special agent and adjuster for his company, and had the appearance of being in good health and in good physical condition up to the 10th of November, 1899; that on that day he hired a team at a livery stable, and thereafter, on the same day, returned to his hotel and was confined to his room. Upon examination it was found that his arm was badly bruised and swollen; that there were bruises upon his shoulder; that his ankle was sprained; that he seemed to be suffering great pain, and that he had never previous thereto had rheumatism. There was medical expert testimony that

acute articular rheumatism could arise from a shock and bruise, and that the death of Hunter might have been due to the accident and injury. On this issue there was expert testimony both ways sufficient to have justified the jury in finding either way. The testimony was sufficient to raise the issue as to whether said Hunter had sustained an injury, and if so, whether said injury was accidental and the sole cause of his death, and called for a charge submitting these issues to the jury. The verdict of the jury includes an affirmative finding thereon. In deference to the verdict we find that an accidental injury did occur, from external and violent means, to W. Hugh Hunter, on November 10, 1899, leaving upon his body marks, and that such accidental injury, independent of all other causes, resulted in and produced his death. In support of these views, in addition to the authorities cited, see Insurance Co. v. Burroughs, 69 Pa. St., 43, 8 Am. Rep., 212-218; McGlinchay v. Fidelity Co., 80 Me., 251, 8 Am. St. Rep., 190; Healey v. Association, 25 N. E. Rep., 52-54; Insurance Co. v. Murray, 16 Colo., 296, 26 Pac. Rep., 774; Cronkite v. Insurance Co., 75 Wis., 116, 43 N. W. Rep., 731; Paul v. Insurance Co., 112 N. Y., 472, 8 Am. St. Rep., 758-767; Railway v. Mussette, 86 Texas, 708, 719; 12 Am. and Eng. Enc. of Law, 444-447, and cases cited; Railway v. Wheeler, 41 S. W. Rep., 517; Insurance Co. v. Hicks, 23 Texas Civ. App., 74, 56 S. W. Rep., 87-90. These remarks dispose of the first, second, and ninth assignments adversely to appellant.

2. The third assignment of error complains of the action of the court "in refusing to sustain appellant's motion to withdraw from the jury all that part of the evidence of F. Scudder to the effect that W. Hugh Hunter told him that he happened to the accident, and also the testimony of Emil Haueisen to the same effect, and also all the testimony in the record to the effect that W. Hugh Hunter had told anyone that he had been accidentally injured, because the evidence showed that said declarations were made long after the accident had happened, and at a different place, and were made at such time as not to be res gestae, and were self serving declarations." The motion was overruled, and the defendant took a bill of exceptions in which the court states his reason for overruling the same "that he was unable to recall, and counsel failed to point out, any testimony which had been admitted which is objectionable on the grounds herein indicated, and for the further reason that the court could not recall any testimony which had been admitted over any such objection, but on the contrary the court had been careful to sustain every such objection." The particular testimony which the defendant sought to have withdrawn was not specially set up in the motion, nor is the same stated in the bill of exceptions. The motion was too general. Had it been sustained, the jury would have been left in doubt as to what particular testimony it embraced. The motion should have set out the exact testimony which the defendant sought to have withdrawn. Railway v. Johnson, 95 Texas, 409, 67 S. W. Rep., 768.

3. The fourth, sixth, and seventh assignments of error complain of

the court's ruling in the admission of evidence. The deposition of certain witnesses was taken by plaintiff, and the answers of the respective witnesses to the interrogatory seeking to show an accidental injury was objected to for the reason "that it discloses that all of the testimony of said witness is predicated upon declarations made to him by the deceased long subsequent to the happening of the alleged injury, and said statements were not part of the res gestae." The objection was sustained in part and the court excluded all that part of the answer of the several witnesses which, in the opinion of the court, was hearsay, and all statements made by the deceased to the witnesses, and overruled the objection as to the balance of the answer which was read in evidence. There was no error in this ruling. The evidence was offered to show an injury. The witnesses in that part of the answer admitted testified to the actual physical condition of Hunter based exclusively upon their personal observations. The testimony does not show that the answers were predicated upon what the deceased told the witnesses. It is undisputed that notice was given by Hunter, to the company, of an accident and injury to him for which he claimed benefits under the policy. It is further shown that after death proofs were furnished, the adjuster of the company investigated the circumstances attending the alleged injury, and thereafter offered to pay the weekly indemnity of $25 per week from the time of the alleged injury to the death of Hunter. He denied liability for the face of the policy, because he claimed Hunter did not die from an injury, but from rheumatism. The insurance company took the deposition of five physicians for the purpose of eliciting their professional opinion as to the cause of Hunter's death. In the interrogatory stating the predicate for such opinion the following statement is made without any qualification: "In the suit at bar W. Hugh Hunter, husband of the plaintiff, is shown to have been injured on the afternoon of November 10, 1899, in San Antonio, Texas, in the following manner: While he was getting out of a buggy the horse made a step forward that caused him to miss his step and swing to the buggy with his left hand, which caused a severe wrench that hurt quite severely at the time, but was soon forgotten. The next day it hurt more. The following day he suffered so much with pain that he had to give up work. The next day he called a doctor, who said he was suffering with acute articular rheumatism. After three or four days he was moved to Dallas, Texas. Another doctor was called on November 17, 1899, who found him suffering with a severe pain in the left wrist, with swelling on the tissues about the joint. The pain was much aggravated by any motion. There was fever and general systemic disturbance. The inflammation involved the synovial membrane, sofe tissues, and tendons about the joint. About December 1st, following, the heart became affected. Pericarditis and mitral insufficiency, with occasional attacks of angina pectoris followed. On January 15th, following, the heart symptoms grew worse. The attacks of angina pectoris were more virulent and prolonged, and on January 17th death ensued during one of the

attacks. It should have been stated that the patient's ankle was also swollen when the doctor was called on November 13th." The interrogatory containing the above admission in reference to the accident was read to the jury by defendant.

4. The matters complained of in the fifth assignment present no reversible error. It is contended that the court erred in overruling the exception to direct interrogatory number 2, propounded by the plaintiff to witness, Haueisen, the exception being that it assumed the happening of an accidental injury to Hunter. The question reads: "Did you know, in his lifetime, W. Hugh Hunter, who was special agent of the Georgia Home Insurance Company of Texas, who met with an accident and injury at San Antonio, Texas, on or before November 10, 1899? If so, how long had you known the said Hunter?" To which the witness answered: "Yes, sir; I knew W. Hugh Hunter in his lifetime. He was special agent of the Georgia Home Insurance Company of Texas, in November, 1899. I have known Mr. Hunter about five or six years." The jury must have understood the interrogatory, considered in connection with the answer thereto, was one intended to identify the witness. The same interrogatory was propounded to other witnesses and read without objection when the testimony of such witnesses was offered. No objection was made to the interrogatory in writing before the trial began.

5. The tenth assignment of error complains of the action of the court in refusing a special charge requested by defendant. The matters contained in the requested charge were embraced, in general terms, in the main charge. The requested charge contained a proposition of law which was not correct, and there was no error in refusing the charge as a whole. Railway v. Sheider, 88 Texas, 166; Railway v. Kelley, 34 S. W. Rep., 813.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

### OPINION ON REHEARING.

Appellant in its motion for rehearing complains of the language used in the third paragraph of the opinion discussing the fourth, fifth, and seventh assignments of error. It is insisted that the court holds therein that part of the interrogatory therein quoted was an admission of the injury, and that such holding was error. We did not so hold. The use of the word "admission" in the last sentence of the discussion is somewhat misleading. The word "statement" should have been used instead of "admission." While we did not hold, and do not now, that the statements in the interrogatory amounted to an admission of the injury, yet they, in connection with the other matters set forth in the opinion, were in evidence and the jury might well infer therefrom that the issue as to whether Hunter had sustained an injury was not seriously contested by the defendant, appellant here. The record shows that the sharp

contention in the trial court was that the death of Hunter did not result from an injury, but from rheumatism.

We have deemed it proper to make these remarks to prevent any misconception in our holding as to the effect of the statements contained in said interrogatory.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.