## TRADERS & GENERAL INS. CO. v. HUNTER.

No. 4594.

Court of Civil Appeals of Texas. Amarillo.

May 4, 1936.

Rehearing Denied June 15, 1936.

Will R. Saunders, of Amarillo, Nelson Scurlock and Lightfoot & Robertson, all of Fort Worth, for plaintiff in error.

L. B. Godwin and Kimbrough & Boyce, all of Amarillo, for defendant in error.

HALL, Chief Justice.

Hunter filed this suit in the district court of Potter county against Traders & General Insurance Company, seeking to set aside an award of the Industrial Accident Board,

and to collect compensation insurance on account of certain personal injuries alleged to have been received by the said Hunter on or about the 26th day of July, 1934, while in the employ of Capitol Hotel Company, Inc., in Potter county.

The substance of the pleadings is that on said date he suffered an accident and sustained accidental personal injuries. In great detail he alleges the nature and extent of his injuries to his brain, nervous system, bones, spinal cord, etc.; that at the time he was endeavoring to go to the storeroom of the Capitol Hotel for supplies; went hurriedly up the concrete stairway and near the top he unintentionally stepped upon a cube of ice, causing his feet to fly from under him; that his body struck the stairway violently and he rolled to the bottom; that the injuries he sustained resulted in immediate, complete, and prolonged unconsciousness and paralysis of the body, impairment of vision, hearing, speech, equilibrium, etc.; that he sustained injuries to his kidneys; that he suffers from urethritis, sepsis, toxemia, lassitude, dyspnœa, nervousness, traumatic neurosis, ankylosis, arthritis, neuritis, strain, sciatica and atrophy; also resulting in pain, tenderness, and headache, interfering with his sleep and normal rest. He alleged that the injuries were permanent and rendered him totally incapacitated to obtain and retain employment immediately after said accident, and that the total incapacity continued without interruption up to the time of the filing of his petition and was permanent; but in the event he is mistaken in alleging that the total incapacity is permanent, then, in the alternative, that it would last for an indefinite period of time exceeding 401 weeks in any event. That he sustained said injuries while engaged in the course of, and that they arose out of the work and employment of himself by his employer; that they had to do with and originated in the usual course of the business, trade, occupation, or profession of said employer, and were sustained while engaged in and about the furtherance of the business and affairs of said employer; and that said injuries were received in Potter county.

He alleged the necessary jurisdictional facts; that his employer had more than three employees, had due notice of his injuries; that he made due claim for compensation within six months, and filed his claim with the Industrial Accident Board, claiming compensation at $13.85 per week for 401 weeks; that the Industrial Accident Board, on February 2, 1935, made and entered its final ruling on said claim; that he filed notice of his unwillingness to abide by the decision and filed this suit in the district court of Potter county.

He alleged that he was an experienced cook, and had worked for the Capitol Hotel Company the entire year immediately preceding the date of his injuries; that during said time he earned $62.50 per month, $40 of which was paid in cash, and the balance was board or meals furnished by his employer of the market value of $22.50 per month; that after becoming a subscriber to the National Recovery Act (48 Stat. 195), his employer paid him the sum of $62.50 in money, and he continued to board with his said employer and paid $22.50 per month out of said monthly wage; that he worked 355 days and earned the sum of $729.16, $\frac{1}{52}$ part of which is $14.02, that being the average weekly wage just and fair to both parties, computed as provided under Revised Statutes, art. 8309, § 1, first subsecs. 3, 4.

The plaintiff in error answered by general demurrer and general denial. The general demurrer was overruled.

The case was tried to a jury, and in response to special issues the jury found as follows:

1. (a) From a preponderance of the evidence that John Hunter sustained personal injuries on the 26th day of July, 1934.

(b) That such injury was sustained by him in the course of his employment for the Capitol Hotel Company, Inc.

2. (a) That John Hunter was rendered totally incapacitated for work as a result of his injuries sustained on said date.

(b) That said total incapacity is permanent.

3. (a) That Hunter did not sustain partial incapacity for work as the result of said injury.

(b) That he will not be partially incapacitated in the future as the result of his injuries.

4. This is a special case in which manifest hardship and injustice will result to him if his compensation is not paid in a lump sum.

5. $14.22 was the average weekly wage of John Hunter at the time of his injury.

6. John Hunter is free from disease which is entirely disconnected with, inde-

pendent of, and not traceable to the injuries, if any, received by him on said date.

: 7. The injury sustained by the plaintiff on July 26th was accidental.

Based upon the verdict, the court decreed that Hunter do have and recover from the Traders & General Insurance Company the sum of $2,691.41 in a lump sum, after crediting said amount with $140.59 previously paid. One-third of the recovery was decreed to L. B. Godwin, plaintiff's attorney.

The contention is submitted here upon eighteen propositions.

Appellant's first contention is that the court erred in overruling its objection to the testimony of Dr. A. J. Caldwell with reference to what was the cause of the sclerosis of the spine with which the witness stated it was his opinion the appellee was suffering after said witness had testified that the appellee was suffering from sclerosis of the spinal cord, which was not only permanent, but progressive.

By the second proposition it is insisted that to render the testimony of a medical expert, based upon an X-ray photograph, admissible in an action for personal injuries, it must be proved that such X-ray photograph forming the basis of such testimony was the photograph of the injured party and that the same was properly taken and developed, and that it clearly portrays the subject-matter thereof. His testimony covers about fifteen pages of the statement of facts. The record shows that he made an examination of the appellee the night before he testified, for the purpose of qualifying himself as a witness. He testified at great length and with much particularity as to the extent of the examination he made, and the result of such examination. The greater part of his testimony related to the objective symptoms, though a portion thereof was based upon subjective symptoms. He detailed the facts relating to the condition of Hunter as he found them during the examination he gave him. He stated that it was his opinion Hunter's condition was permanent and was progressive and would ultimately produce his disintegration; that Hunter was not able to work and would never be able to do any industrial work that required his hands and body to perform.

On cross-examination this testimony was elicited:

"Q. Well, he gave you a history of it, didn't he? A. A partial history.

"Q. How he fell? He told you how he fell? A. No, sir, he didn't, but his wife did.

"Q. She told you he fell on some concrete stairs? A. She was not there at the time, but the history I got was he slipped on a chunk of ice or a cube of ice and fell on the concrete steps and they found him unconscious. That is the subjective history I got."

He further stated that he was informed of the condition in which Hunter was found after he fell, and how long that condition existed; that they told him how long Hunter was in the hospital, and that after he fell he was unconscious for eight or nine hours; that he was in the hospital for some time, and went back there two or three times. Then he testified:

"Q. And in making your diagnosis you took that into consideration? A. I did.

"Q. And then did you take into consideration any of the X-ray findings or lack of findings? A. Yes.

"Q. Who made the pictures? A. I have not seen any pictures. Dr. Prince made a number of pictures last evening, and I have his interpretation.

"Q. And you took that into consideration, of course, in making this diagnosis? A. Yes, sir."

No objections were made while the witness was testifying, and at the conclusion of the testimony of Dr. Caldwell appellant's attorney made two motions, the first asking the court to instruct the jury that they could not consider, for any purpose, Dr. Caldwell's testimony "with reference to what was the cause of the sclerosis of the spine with which the witness stated it was his opinion the plaintiff was suffering for the reason that such opinion was based in part, if not entirely, upon hearsay testimony, was self-serving in its nature, and such opinion shows to have been based upon the history of the case and the subjective symptoms, and upon a report of X-ray pictures, all of which are not introduced in evidence, and it would be hearsay testimony." Appellant's counsel further moved the court to instruct the jury not to consider, for any purpose, the opinion of Dr. Caldwell "as to what the plaintiff was suffering from, and the disability and results thereof, especially as to whether or not it

was permanent, for the reason that said opinion is shown by the record to have been based upon the reading of X-ray pictures made by another doctor, and for the further reason that said opinion is based upon the history of the case and subjective symptoms, as well as objective symptoms found in the patient by the doctor, and the same is based in part, if not in whole, upon hearsay testimony and self-serving declarations."

In the case of Panhandle & S. F. Ry.Co. v. Cowan (Tex.Civ.App.) 243 S.W. 912, Judge Boyce announces the general rule with reference to the admission or exclusion of testimony offered as a whole when a part of it is not admissible, or objected to as a whole when a part of it is admissible, citing numerous authorities. The objection in that case was to the introduction of the account sales in a cattle shipment. Judge Boyce said: "A number of reasons were advanced why it was not admissible, among them that it contained secondary evidence in the reproduction of the weights of the hogs, but there was no request to exclude any particular portion of the instrument on this account. We think the case falls within the rule of the authorities cited in the original opinion. This rule works both ways in the protection of the trial court. If an instrument containing admissible and inadmissible evidence is offered and objected to as a whole, there is no reversible error, whether the instrument be admitted or rejected. See Missouri, K. & T. Ry. Co. v. Washburn (Tex.Civ.App.) 184 S.W. [580], 582."

Neither of the motions, from which we have quoted above, attempted to specify the objectionable part of Dr. Caldwell's testimony which, to some extent, was scattered through the entire fifteen pages of the record. By the objection counsel asked the court to instruct the jury that they could not consider that part of the witness' testimony which referred to the cause of the sclerosis, nor any part of the witness' testimony which formed the basis of his opinion predicated upon reading of the X-ray pictures by another and different doctor, and not to consider any part of the witness' testimony which was based upon subjective symptoms, hearsay testimony, and self-serving declarations. These objections are wholly insufficient. It was not the duty of the trial judge to point out and particularize the portions of the witness' testimony based upon numerous subjective symptoms,

hearsay testimony or information founded otherwise than upon objective symptoms. The law imposes no such a burden upon the trial judge, and if the court had instructed the jury not to consider testimony, which appellant insists was objectionable, without pointing out specifically the very language of the witness which was subject to objections, the jury would have had an interminable job, and no such burden is placed upon any jury by the rule.

In the case of Travelers' Ins. Co. v. Hunter, 30 Tex.Civ.App. 489, 70 S.W. 798, 800, the court said: "A third assignment of error complains of the action of the court 'in refusing to sustain appellant's motion to withdraw from the jury all that part of the evidence of F. Scudder to the effect that W. Hugh Hunter told him that he happened to the accident, and also the testimony of Emil Haueisen to the same effect, and also all the testimony in the record to the effect that W. Hugh Hunter had told any one that he had been accidentally injured, because the evidence showed that said declarations were made long after the accident had happened, and at a different place, and were made at such time as not to be res gestæ, and were self-serving declarations.' The motion was overruled, and the defendant took a bill of exception, in which the court states as his reason for overruling the same 'that he was unable to recall, and counsel failed to point out, any testimony which had been admitted which is objectionable on the grounds herein indicated, and for the further reason that the court could not recall any testimony which had been admitted over any such objection, but, on the contrary, the court had been careful to sustain every such objection.' The particular testimony which the defendant sought to have withdrawn was not specially set up in the motion, nor is the same stated in the bill of exceptions. The motion was too general. Had it been sustained, the jury would have been left in doubt as to what particular testimony it embraced. The motion should have set out the exact testimony which the defendant sought to have withdrawn. Missouri, K. & T. Ry. Co. v. Johnson, [95 Tex. 409], 67 S.W. 768."

These propositions are overruled; and for the same reasons the third proposition is overruled.

Dr. Hendrick testified for the defendant that he was called to the Capitol Hotel immediately after Hunter had fallen down

the stairs, and reached the scene of the accident in about twenty or thirty minutes; that he found Hunter in a semiconscious condition, his jaws tightly clamped together, his muscles rigid, his head pulled back, his fists clenched, and a pallid face; that after an examination his diagnosis was that Hunter had an attack of epilepsy; that he examined him again on April 27th and found that he was afflicted with chronic epilepsy.

Appellee had alleged that he was totally and permanently disabled as a result of his injuries, and the defendant answered by general demurrer and general denial.

The court submitted this issue: "(a) Do you find, from the preponderance of the evidence, that the plaintiff is free from disease, that is, entirely disconnected with, independent of, and not traceable to the injuries, if any, received by him on July 26, 1934?"

The jury answered this in the affirmative. The issue was followed by this instruction from the court:

"If you have answered subdivision (a) of this issue in the affirmative, then you need not answer subdivision (b), but if you have said answered subdivision (a) in the negative, then answer

"(b) Do you find, from the preponderance of the evidence, that the plaintiff's incapacity, if any, is not due solely to such disease if any? Answer 'It is not' or 'It is,' according to your findings."

Subdivision (b) was not answered.

■ The first objection urged to subdivision (a) is that it inquires of the jury whether the plaintiff is free from disease, instead of inquiring whether he was free from disease at the time of the accident. We think this objection is well taken.

■ The theory was that he fell from the top step of the stairway as a result of an epileptic fit, rather than as alleged by his stepping on a cube of ice. It is a matter of common knowledge that if he was afflicted with epilepsy at the time of the accident, he was still so afflicted at the time of the trial.

■ This part of the court's charge is attacked by five propositions. The first four complain of the court's failure to inquire of the jury whether the plaintiff's total incapacity, his partial incapacity, his permanent incapacity, and temporary incapacity, were caused solely by epilepsy; and by the next proposition it is insisted that because the pleadings and evidence raise the defensive issue of his incapacity being the result of epilepsy, the trial court should have affirmatively and unconditionally have submitted such issue to the jury, and that without regard to its finding or answer on the issue of whether or not, at the time of the trial, the plaintiff was free from disease disconnected with, independent of, and not traceable to his injuries. We think these propositions should be sustained.

In Indemnity Ins. Co. of N. A. v. Boland (Tex.Civ.App.) 31 S.W.(2d) 518, it is said: "Under its plea of general denial appellant could have defeated appellee's cause of action by a jury finding that he had fully recovered, or that he was suffering only a partial incapacity. Under the general denial appellant could offer any testimony that would deny the truth of the allegations upon which appellee based his cause of action. Having the right to offer this testimony, certainly it had the right to have an affirmative submission of the defensive issues thus raised; therefore, it was reversible error on the part of the trial court to refuse, at the request of appellant, to submit to the jury affirmatively the issue of partial disability."

In Ferguson Seed Farms v. Fort Worth & D., S. P. Ry. Co., 69 S.W.(2d) 223, 227, this court said: "It is settled law in Texas that each party has the right to have all of the material ultimate issues of fact made by its pleadings and proof submitted to the jury, and, in the event of the court's failure to do so, the complaining party may, by objections properly filed, call the court's attention to the omission, or present special issues with the request that they be submitted to the jury. He is not required to do both, and should the trial judge fail to correct his charge or to submit the special issues requested, there is sufficient grounds upon which to base an assignment of error."

Judge Dunklin said, in Texas & Pacific Ry. Co. v. Hancock (Tex.Civ.App.) 59 S. W.(2d) 313, 317: "Under the well-established rule of decisions in many cases, notably [Dallas Hotel Co. v. Fox (Tex.Civ. App.) 196 S.W. 647] Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, each party to the suit has the right to an affirmative presentation of the facts constituting a right of action or defense thereto which have been pleaded and which are supported by proof." United States F. & G. Co. v. Baker (Tex.Civ.App.) 65 S.W.(2d) 344.

It is said in the Boland Case, supra: "It is no answer to this conclusion to say that, since the jury found total incapacity, it must be presumed that it would have found against appellant on the issue of partial in-

capacity. Had this issue been submitted to the jury, it might have found thereon in favor of appellant. Not having before it the issue of partial incapacity, the jury may have disregarded this defense which, as said by the Supreme Court in Galveston, H. & S. A. Ry. Co. v. Washington, 94 Tex. 510, 63 S.W. 534, 538, in discussing this identical proposition, 'they might have given effect to if it had been brought to their attention.'"

■ By the 14th proposition appellant complains of the failure of the court to submit to the jury the issue of temporary partial incapacity of the defendant because it was raised both by the pleadings and the evidence, and because plaintiff in error was entitled, as a matter of law, to have said issue submitted in such manner as would permit the jury to consider and answer that issue, independent of and without regard to the issue of permanent partial incapacity.

By special issue No. 3, the court inquired:

"(a) Do you find, from the preponderance of the evidence, that the said Hunter has sustained partial incapacity for work as the result of the said injuries, if any, sustained by him on July 26, 1934? Answer 'yes' or 'no.'

"(b) Do you find, from the preponderance of the evidence, that the said Hunter will be partially incapacitated for work in the future as the result of his injuries, if any? Answer 'yes' or 'no.'

"If you have answered subdivisions (a) and (b) of this issue, or either of them, in the affirmative, then answer

"(c) Do you find, from the preponderance of the evidence, that such partial incapacity, if any, for work is permanent? Answer 'yes' or 'no.'

"If you have failed to find that such partial incapacity, if any, is permanent, then answer

"(d) Find from the preponderance of the evidence the number of weeks, if any, of such partial incapacity, if any, for work.

Answer by stating the number of weeks, if any, of such partial incapacity, if any; whether the time of such partial incapacity, if any, has wholly passed or will continue to some future time.

"(e). Find from the preponderance of the evidence, the percentage, if any, of plaintiff's partial incapacity, if any, for work. Answer by stating the percentage found by you, based upon an average for the entire time of such partial incapacity, if any."

These issues were objected to because the issue as to partial incapacity was not unconditional and unqualified submission of such issue to the jury as the defendant was entitled to have under the law; that as submitted the jury were permitted to answer only in the event they had found that the partial incapacity of the plaintiff is not permanent.

There has been much confusion and more or less conflict between the courts upon this question, but it seems to have been settled that even though the court submitted the question of permanent partial incapacity, if the pleadings raised the issue of temporary partial incapacity, that should be submitted without regard to the submission of an issue upon total permanent incapacity. Numerous cases may be cited, among them Texas Ind. Ins. Co. v. Head (Tex.Civ.App.) 89 S.W.(2d) 283; Traders & General Ins. Co. v. Wimberly (Tex.Civ.App.) 85 S.W. (2d) 343; Traders & General Ins. Co. v. Babb (Tex.Civ.App.) 83 S.W.(2d) 778; Texas Employers' Ins. Ass'n v. Horn (Tex. Civ.App.) 75 S.W.(2d) 301; Indemnity Ins. Co. v. Boland, supra.

The plaintiff testified that his monthly wage was $62.50. Forty dollars of this amount was paid in cash, and $22.50 in board. The issue of the market value of plaintiff's board was raised by the evidence, but appellant insists that the market value has not been fully and properly established. This question probably will not arise upon another trial, and will not be discussed.

For the errors pointed out, the judgment is reversed and the cause remanded.