**NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, Appellant,**

v.

**Mildred L. BROGDON, Appellee.**

No. 15980.

Court of Civil Appeals of Texas.

Fort Worth.

March 13, 1959.

**404**

Jones, Parish & Fillmore and Elmer H. Parish, Wichita Falls, for appellant.

Jennings & Montgomery and Elton M. Montgomery, Graham, for appellee.

BOYD, Justice.

Mildred L. Brogdon, the beneficiary in three insurance policies providing for indemnity for death by accidental means, issued by The National Life and Accident Insurance Company on the life of her husband, James Phillip Brogdon, recovered judgment from which the Insurance Company appeals.

Two of the policies provided for ordinary death benefits, and the amounts there-

for specified were paid. The indemnity provided for in the three policies is payable if the insured sustained bodily injuries effected solely through external, violent, and accidental means, and that such bodily injuries have directly and independently of all other causes, caused the death of the insured within ninety days from the time such injuries were so sustained, with the provision that the benefit shall not be payable "if death results directly or indirectly" from bodily or mental infirmity or disease. Brogdon died on August 20, 1957.

The jury found: The deceased sustained bodily injuries on August 20, 1957; these injuries were effected solely through violent, external and accidental means; these injuries caused the death of Brogdon directly and independently of all other causes; on or about August 20, 1957, Brogdon was suffering from a defect in his metabolism; such defect was a contributing cause of his death; and the defect in his metabolism was effected solely through violent, external, and accidental means.

Appellant contends that there was no evidence, or the evidence was insufficient, to support the findings that any injuries the deceased may have sustained were effected solely through external, violent, and accidental means; or that his death resulted directly and independently of all other causes, from bodily injuries effected solely through external, violent, and accidental means; or that the metabolic defect from which deceased was suffering was effected solely through external, violent, and accidental means; further, that there is an irreconcilable conflict between the finding that bodily injuries caused death, directly and independently of all other causes, and the finding that a metabolic defect was a contributing cause.

At the time of his death, Brogdon was working as a mechanic for a trucking company. He was 24 years of age, 6 feet 3 inches in height, and weighed about 170 pounds. He was healthy and strong. At approximately 10:00 A. M. on August 20,

1957, he was "airing up" a truck tire; "He was bent over a tire. * * * Yes, kinda squatted down there by the tire." A coemployee, Leonard Johnson, approached him from the rear and jabbed, or "goosed", him in the ribs; Johnson ran; he testified that he knew Brogdon would try to catch him; Brogdon jumped up and ran toward Johnson, overtaking him after two of three steps; Brogdon caught Johnson from the back and got hold of him; they scuffled momentarily; Brogdon's grip on Johnson relaxed and he fell to the ground and died. A physician made an incision in Brogdon's chest and performed a cardiac message, but he was not revived.

About three hours after Brogdon's death Dr. Irvine, a pathologist, performed an autopsy. He found nothing that indicated a cause of death. According to his testimony, Brogdon was extremely well developed and a very muscular man; his heart was that of an extremely healthy man; his lungs were normal; so were his liver, gall bladder, spleen, pancreas, gastrointestinal tract, kidneys, bladder, and adrenal glands. Dr. Irvine found a slightly increased hyperplastic lymphoid tissue in the thymus gland, which he said was "a slight degeneration, but not too much, just a very little, which would indicate that some metabolism had taken place. It is possible that some metabolism had taken place shortly prior to his death." From a complete anatomical investigation, Dr. Irvine found no visible alteration of the body that would indicate a cause of death. He said there were causes of death which cannot be detected by an autopsy.

He further testified in substance: He thought death was caused by a coronary artery spasm or by ventricular fibrillation, the probability being that it was the former; a coronary spasm is "a status of complete contraction of the arterial wall muscles causing closure of the opening in the center of the vessel and occluding the flow of blood"; ventricular fibrillation is an actual physiological state of the heart muscle in which a disorganized rhythm

becomes established, which is in itself incompatible with life, and is due to an abnormality in the metabolism or conduction of the heart muscle. In such cases the heart muscle does not get the proper chemicals, the lack of which causes it to have a disorganized rhythm. Generally, the things which bring about these coronary disturbances are overeating, overexertion, or excitement. There are many possible causes of metabolic imbalance; physical labor and diet, such as not enough or too much salt, may enter into it; it is a very common thing; it is not unusual or even particularly abnormal to have a temporary imbalance; it occurs in many normal human beings; it is the usual process that a person gets in balance again after he becomes temporarily imbalanced following stress, strain and excitement or overeating; the imbalance can be created by hard work, regular manual labor and strenuous exertion. Hard labor and strenuous exertion of deceased were contributing factors to his condition. "If he had not sustained the sudden excitement or sudden stress, which was described, he would not have died with a metabolic defect as it was." He believed it was a spasm of the artery going into his heart that caused his death. "Q. * * * in all reasonable probability, based upon the facts which you have given us, would it have been some traumatic occurrence that brought about the death of Phillip Brogdon? A. With some added insult, yes, sir. Q. Without that added insult would he have died? A. Not under the existing circumstances, no, sir."

We think the evidence is sufficient to support the findings that deceased sustained bodily injuries which were effected solely through external, violent, and accidental means, and that those injuries caused his death, directly and independently of all other causes. Bryant v. Continental Casualty Co., 107 Tex. 582, 182 S.W. 673, L.R.A.1916E, 945; United States Mutual Accident Association v. Barry, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60; Hammer v. Mutual Ben. Health & Accident Ass'n, 158

Ohio St. 394, 109 N.E.2d 649, 36 A.L.R.2d 1084; Railway Mail Ass'n v. Forbes, Tex. Civ.App., 49 S.W.2d 880; Bankers' Health & Accident Co. of America v. Shadden, Tex.Civ.App., 15 S.W.2d 704; Shepherd v. Midland Mut. Life Ins. Co., 152 Ohio St. 6, 87 N.E.2d 156, 12 A.L.R.2d 1250; Horsfall v. Pacific Mutual Life Insurance Company, 32 Wash. 132, 72 P. 1028, 63 L.R.A. 425; Commercial Travelers Insurance Co. v. Walsh, 9 Civ., 228 F.2d 200, 56 A.L.R.2d 796; Scanlan v. Metropolitan Life Ins. Co., 7 Cir., 93 F.2d 942; Provident Life & Accident Ins. Co. v. Watkins, 256 Ky. 645, 76 S.W.2d 889; Aetna Life Ins. Co. v. Hicks, 23 Tex.Civ.App. 74, 56 S.W. 87; Continental Casualty Co. v. Lloyd, 165 Ind. 52, 73 N.E. 824; Thornton v. Travelers' Ins. Co., 116 Ga. 121, 42 S.E. 287; McVeigh v. International Travelers Assur. Co., Tex.Civ.App., 101 S.W.2d 644; Standard Accident Ins. Co. v. Cherry, Tex.Civ. App., 40 S.W.2d 873, error refused; 45 C. J.S. Insurance § 753, p. 777.

We quote from Hanna v. Rio Grande Nat. Life Ins. Co., Tex.Civ.App., 181 S.W. 2d 908, 909, error refused, where the court discussed various interpretations of the phrase "accidental means": "It is stated in 1 C.J., page 427, viz.: 'Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be charged with a design of producing—it is produced by accidental means.' At least since International Travelers' Ass'n v. Francis, 119 Tex. 1, 23 S.W.2d 282, 284, our Supreme Court has been committed to the latter or more liberal rule."

The policy provisions considered here have been applied to various states of fact, and the decisions are not harmonious. Some cases hold that if the accident accelerates death, it must be held to be the proximate and sole cause, even though death was hastened by a diseased condition. Fidelity & Casualty Co. v. Meyer, 106

Ark. 91, 152 S.W. 995, 44 L.R.A.,N.S., 493; Benefit Ass'n of Railway Employees v. Armbruster, 224 Ala. 302, 140 So. 356; Sturm v. Employers' Liability Assur. Corp., 212 Ill.App. 354. Contrary holdings seem to have been made in Kerns v. Aetna Life Ins. Co., 8 Cir., 291 F. 289, and Kirkwood v. London & Lancashire Indemnity Co., 14 La.App. 438, 131 So. 703.

Some cases make a distinction between proximate and remote cause, holding that the remote cause will not prevent recovery, and that in cases of doubt as to whether an existing infirmity or disease is a remote or proximate cause, the issue is one for the jury. In Equitable Life Assur. Soc. of United States v. Gratiot, 45 Wyo. 1, 14 P.2d 438, 442, 82 A.L.R. 1397, the court said: "The foundation upon which these cases are built is the rule of proximate cause. That rule was expressed by Watkin Williams, J., in Lawrence v. Acc. Ins. Co., 7 L.R.Q.B.D. 216, in 1881, as follows: 'Lord Bacon's language in his Maxims of the Law, Reg. 1, runs thus: "It were infinite for the law to consider the causes of causes, and their impulsions one of another; therefore it contenteth itself with the immediate cause." Therefore, I say according to the true principle of law, we must look at only the immediate and proximate cause of death, and it seems to me to be impracticable to go back to cause upon cause, which would lead us back ultimately to the birth of the person, for if he had never been born the accident would not have happened.'"

The court, in Bird v. St. Paul Fire & Marine Ins. Co., 224 N.Y. 47, 120 N.E. 86, 87, 13 A.L.R. 875, said: "There are times when the law permits us to go far back in tracing events to causes. The inquiry for us is how far the parties to this contract *intended* us to go. The causes within their contemplation are the only causes that concern us. A recent case in the House of Lords gives the true method of approach. Leyland Shipping Co. v. Norwich F. Ins. Co. [1918] A.C. 350, 369. Lord Shaw refers in his opinion to the common figure of

speech which represents a succession of causes as a chain. He reminds us that the figure, though convenient, is inadequate. 'Causation is not a chain, but a net. At each point, influences, forces, events, precedent and simultaneous, meet, and the radiation from each point extends infinitely.' Ibid. From this complex web, the law picks out now this cause and now that one. The same cause producing the same effect may be proximate or remote as the contract of the parties seems to place it in light or shadow. That cause is to be held predominant which they would think of as predominant. A common-sense appraisement of everyday forms of speech and modes of thought must tell us when to stop. It is an act of 'judgment as upon a matter of fact.' Ibid."

"* * * if, under the peculiar temperament or condition of health of an individual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervention of any other independent force, then it should be regarded as the sole and proximate cause of death. The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease and low vitality do not rise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury." Driskell v. United States Health & Accident Ins. Co., 117 Mo.App. 362, 93 S.W. 880, 882.

Policy provisions substantially identical to those here involved were considered in Equitable Life Assur. Soc. of United States v. Gratiot, 45 Wyo. 1, 14 P.2d 438, 445, 82 A.L.R. 1397. A car driven by the deceased left the road, went down a steep embankment, and struck some rocks. Immediately thereafter his speech was slurred and he seemed to be mentally dull; six days later he suffered a paralytic stroke, and in three more days he died from paralysis caused by a cerebral hemorrhage. Three physicians testified that death was caused by a rupture of an aneurysm of an artery and the resulting hemorrhage, the aneurysm having existed before the accident. An aneurysm was said to be a dilated portion and the weakest spot of the artery. One physician said the aneurysm contributed to the death, but would not have ruptured except for the accident; one said the accident may have had something to do with the death, but he did not think the accident caused the hemorrhage; the other said the aneurysm was the primary cause of death. Another physician said he did not know whether an aneurysm existed before the accident, but the hemorrhage was caused by the accident; and another said he found no evidence of an aneurysm, although it might have existed, but physical shock is liable to cause hemorrhage. After reviewing a great number of cases, some denying and some awarding recovery where there was preexisting infirmity or disease which contributed to death, the court, in allowing recovery, said:

"Counsel's claim that no recovery should be permitted herein would, doubtless, be valid, if it were conceded that any bodily infirmity which, from a scientific standpoint, contributes to the death, would have that effect under the terms of the contract, and that is virtually what counsel, upon ultimate analysis, insist on. They apparently overlook the difference between proximate cause on the one hand, and remote cause or a condition on the other, as recognized in law, not bearing in mind, seemingly, that a contributing cause from a scientific standpoint is not necessarily a proximately contributing cause from a legal standpoint. Silverstein v. Metropolitan Life Insurance Co., supra [254 N.Y. 81, 171 N.E. 914]. The foregoing cases as a whole, or at least many of them, all dealing with policies similar to that in the case at bar, clearly show, we think, that, in solving the problem before us, we cannot overlook the distinction between proximate and remote cause, and that if a disease,

bodily infirmity, or predisposing cause in fact existed, as claimed, still unless it can be said to be one of the proximate causes instead of only the remote cause or condition, recovery should not, on that account, be denied. We said in Lemos v. Madden, 28 Wyo. 1, 10, 12, 16, 200 P. 791, that proximate cause is probable cause, and remote cause is improbable cause; that the mere fact that one cause may in point of time concur with another does not necessarily show that it is an efficient cause, and may still be considered a remote cause, and that a cause may, in law, be a remote cause, notwithstanding the fact that, but for its existence, no injury would have occurred."

In Runyon v. Commonwealth Casualty Co., 9 N.J.Misc. 487, 154 A. 397, 398, the victim of an accident was already afflicted with paralysis agitans, which lessened the resisting power of the body. The court said: "The accident caught him as he was and laid him low. Against that we think he was insured; otherwise there could be no recovery in any case of death by accident where the victim, had he been possessed of perfect health, might have successfully combated the ravaging ills that follow immediately in the wake of physical crash."

What we have said is applicable if we assume that deceased was afflicted with bodily infirmity or disease, not caused by the accident, which contributed to his death. That he was not so afflicted might well be found from the evidence. His condition was described as a "state" or "status"; it is a very common thing; it is not unusual or particularly abnormal; it occurs in many normal human beings.

"It is not every ailment, indisposition, or imperfection that renders one of unsound health. There must be a material departure from sound health * * *." McVeigh v. International Travelers Assur. Co., Tex. Civ.App., 101 S.W.2d 644, 652. "It is true that in a strict or literal sense any departure from an ideal or perfect state of health is a disease, defect or an infirmity. But it is not every defect or infirmity of the insured that is contemplated by the parties in attempting to define the chain of causation, * * *." Police & Firemen's Ins. Ass'n v. Blunk, 107 Ind.App. 279, 20 N.E.2d 660, 663. The words "bodily infirmity or disease" refer only to an ailment or disease of settled character, or one so considerable or significant that it would be characterized as such in the common speech of man. 45 C.J.S. Insurance § 776, sub. b, p. 810.

Moreover, the jury found that deceased's metabolic defect was caused solely by violent, external, and accidental means, which, we think, shows there was no conflict between the findings. The evidence supporting that finding has substance and weight. According to Dr. Irvine, such metabolic defect is generally caused by overeating, overexertion, or excitement. There was no evidence of overeating. Overexertion and excitement were shown by evidence of probative force. It is possible that improper diet might contribute to such a condition; but that was not shown here. His wife said he did not like salt, but she did not limit salt in his food, and there is no evidence that he consumed less salt than the average person. We think the evidence is sufficient to support the finding that the metabolic defect was caused by the accident. If so, its contribution to the fatal result would not preclude recovery. Robinson v. Aetna Life Ins. Co., Tex.Com.App., 276 S.W. 900; Travelers' Ins. Co. v. Hunter, 30 Tex.Civ.App. 489, 70 S.W. 798, error refused.

The judgment is affirmed.