The STATE of Texas et al., Appellants,

v.

G. A. WALKER, Sr., et al., Appellees.

No. 7859.

Court of Civil Appeals of Texas.

Texarkana.

May 28, 1968.

Rehearing Denied June 25, 1968.

———◇———

Hart & Hart, Austin, Gaines Baldwin, City Atty., Marshall, for appellants.

Franklin Jones, Jr., Jones, Jones & Baldwin, Reagan R. Huffman, Marshall, for appellees.

DAVIS, Justice.

A condemnation case. The State of Texas and The City of Marshall, Texas, appellants, filed a claim against G. A. Walker, Sr., and wife, Lucy H. Walker, G. A. Walker Oil Company, Inc., J. B. Watson, Jr., O. D. Huffman and Phillips Petroleum Company, Inc., appellees, for a "partial taking" of a certain tract of land situated in Harrison County, Texas, and described in appellants' "Proceeding in Eminent Domain" as follows:

"County: Harrison

Highway: US Hwy. #59

Project Limits: US Hwy. 80 S to Jct. with St. Hwy. 43 at Five Notch Road
Account: RW 63–1–17

Field Notes for Parcel #75

Name: G. A. Walker

0.207 acres, more or less, of land same being out of and a part of that certain Outlot 66A, out of the Peter Whetstone Survey in Harrison County, Texas, which Outlot 66A, a 0.5 acre tract was conveyed to G. A. Walker by deed dated March 11, 1941 and of record in Volume 241, Page 615, Deed Records of Harrison County, Texas, which 0.207 acres is more particularly described by metes and bounds as follows:

BEGINNING at a point on the present existing East right of way line of US Hwy. 59 and State hwy. 43, hereinafter referred to as "the highway", this point being the existing southwest corner of the G. A. Walker tract, said point being 120 feet, N 87° 30′ W from an iron pin for the said tract's southeast corner, said point being 25 feet at right angles from highway survey Station 183+58.93;

THENCE: N 2° 15′ E, 180.00 feet along the said present existing East right of way line to a point in the North boundary of the Walker tract, this point being the existing Northwest corner of the said tract, said point being 25 feet at right angles from highway survey Station 185+38.93;

THENCE: S 87° 30′ E, 50.00 feet along the said tract's North boundary to a point on the proposed East right of way line of the highway, this point being 75 feet at right angles from highway survey Station 185+38.71;

THENCE: S 2° 15′ W, 180.00 feet along the proposed East right of way to a point in the South boundary of the said tract, this point also being in the North boundary of East Houston Avenue, said point being 75 feet at right angles from highway survey Station 183+58.71;

THENCE: N 87° 30′ W, 50.00 feet along the South boundary of the said tract to the place of beginning.

The above described strip contains 0.207 acres, more or less, of land out of the G. A. Walker 0.5 acre tract in Outlot 66a."

In addition to the land taken, title was also taken to two masonry buildings (one used for a Phillips 66 Service Station, and, one

used for a cafe) together with all the improvements belonging to G. A. Walker, Sr. The other improvements include a canopy, 280 sq. ft. of asphalt, 3,600 sq. ft. of concrete drive, 100 sq. ft. concrete walk, 1 single pole hoist, 1 double pole hoist and 4—1,000 gallon gasoline tanks.

On the land remaining after the partial taking, there was situated one concrete block warehouse, one sheet iron building, 2—2,000 gallon gasoline storage tanks and 2—6,000 gallon gasoline storage tanks. There was evidence introduced to show that these buildings and gasoline tanks would have to be removed in order to put the remaining property to its highest and best use.

There was a strip of land 180 feet long, North and South, and 50 feet East and West that was completely severed along U.S. Hwy. #59, for the purpose of widening Hwy. 59. There was left a strip of land 180 feet by 100 feet.

The case was tried before a jury. There was conflicting evidence offered. It is easy to understand why the jury formed its opinion in favor of the appellees. There were only three special issues submitted to the jury. The special issues and the jury's answers read as follows:

### "SPECIAL ISSUE NO. 1

From a preponderance of the evidence, what do you find was the market value of the 0.207 of an acre strip of land taken by the City of Marshall and State of Texas for highway purposes at the time it was taken, considered as severed land?

Answer in dollars and cents.

Answer: $47,652.00.

### "SPECIAL ISSUE NO. 2

From a preponderance of the evidence, what do you find was the market value of that part of defendants' tract of land not taken; that is, the entire tract of land less the 0.207 acre strip immediately before the 0.207 acre strip was taken for highway purposes?

Answer in dollars and cents.

Answer: $49,350.00.

### "SPECIAL ISSUE NO. 3

Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by the defendants in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract of land across which the strip of land has been condemned, and taking into consideration the uses to which the said strip of land taken is to be subjected or may be subjected, what do you find from a preponderance of the evidence was the market value of that part of defendants' tract of land not taken immediately after the taking of the strip for highway purposes?

Answer in dollars and cents.

Answer: $30,500.00."

The appellants have perfected their appeal and bring forward 18 points of error.

It seems by their points of error, and their argument, appellants do NOT desire to permit the appellees to use the remainder of their property for its highest and most economic use after the partial taking of the small tract, or lot, of land.

Appellants take the position that the trial court erred in overruling their two motions in limine seeking the suppression of certain evidence concerning the restoration of the premises owned by appellee Walker necessary to put Walker in the same position he was in prior to the taking in so far as the market value of the part not taken was concerned, and the suppression of the evidence as to the proceeds from any business or businesses conducted thereon by admitting such evidence in so far as the part of the property NOT taken was concerned. The record is wholly devoid of any such ruling by the trial judge.

There was evidence offered that showed the total value of all the land involved, including all improvements, to be $92,502.00. There was evidence offered to show the market value of the part that was taken, together with improvements, as severed land, to be $47,652.00. There was evidence offered to show the market value of the remainder, before the partial taking, to be $49,850.00. There was evidence offered to show the market value of the remainder, after the partial taking, to be $30,500.00. There was evidence offered to show the damage to the remainder to be $19,850.00. This testimony was offered by a witness by the name of D. H. Snider, III. He was thirty-six (36) years of age, had been trading and trafficking in real estate all of his life, and having had a Real Estate Broker's License since 1959. He had been a City Commissioner, had built at least one hundred commercial and residential structures in and around the City of Marshall in recent years, which involved buying some real estate and then developing it, and on other occasions, just on property owned by others. Two of the witnesses that testified for appellants, said that they had talked to Mr. Snider about the market value of the land being condemned. This, Mr. Snider, emphatically denied. The witnesses for appellants were not recalled to the stand. Mr. Snider testified that he went upon the land on more than one occasion, that he compared the market value of the land with comparable sales within the vicinity of the tract that was being condemned, and from those factors, along with his experience, he formed an opinion as to the market value of the severed tract that was being taken and the market value of the remainder, after the severance.

There was evidence offered by Walker and witness D. H. Snider, III, as to the cost of tearing down the two warehouses for the "limited purpose" of showing the damages to the remainder in order to put the remainder at its highest and most economic use. These facts are elementary that tend to show the diminished market value of the remainder. The Supreme Court, in State v. Carpenter (1936), 126 Tex. 604, 89 S.W.2d 194, said:

"Generally, it may be said that it is proper as touching the matter of the value and depreciation in value to admit evidence upon all such matters as suitability and adaptability, surroundings, *conditions before and after,* and *all circumstances which tend to* increase or *diminish the present market value.*" Emphasis added.

No witness disagreed with the evidence that the highest and most economic use of the remainder of the property was for the purpose of operating a filling station. This testimony was corroborated by one of the witnesses for appellant. There was no dispute that the two warehouses would have to be removed before the remaining property would be suitable for a filling station. The jury was entitled to take into consideration in arriving at the market value of the remainder of the tract, immediately before the partial taking, and immediately after the partial taking, because of the fact that the remainder had the two warehouses situated thereon that would have to be removed. In the Carpenter case,[1] the Supreme Court said, in part, as follows:

" * * * if the improvements which are situated upon the portion of land taken are essential to the use and enjoyment of the remainder of the land, or if their replacement, *by removal* or *reconstruction,* is necessary in order to obviate depreciation in the value of the residue, *the cost of removal,* and/or *reconstruction* and/or *replacement* may be a proper inquiry in connection with the issue of diminished market value of the remainder. See State v. Lowrie (Tex.Civ.App. 1933) 56 S.W.2d 676." Emphasis added.

There was testimony offered to show what the expense would amount to in removing the two warehouses. These are some of the issues that were discussed in the following cases: State v. Carpenter (1936) 126 Tex.

1. 126 Tex. 604, 89 S.W.2d 979, 980.

604, 89 S.W.2d 194, & 89 S.W.2d 979, 980; City of Denton v. Chastain (Tex.Civ.App. 1941), 156 S.W.2d 554, N.W.H.; Pillot et al. v. City of Houston (Tex.Civ.App.1932), 51 S.W.2d 794, N.W.H.

The appellants say the trial court erred in permitting evidence as to the income and profits from the bulk wholesale warehouse. The appellees take the position that since this was only a "partial taking", evidence of income and profits of the entire tract, before the partial taking, was admissible, when it is restricted to the effect it might have on the market value of the part remaining. Appellees further take the position that appellants, by cross-examining their witnesses, without reservation of their objections, and, by offering testimony of their expert witnesses based on prior income from the property, waived any objection to the evidence that they might have had. As to the evidence being admissible, see City of Dallas v. Priolo (1951) 150 Tex. 423, 242 S.W.2d 176; Milam County v. Akers (Tex.Civ.App.1944), 181 S.W.2d 719, R.W.M.; Reilly v. State (Tex.Civ.App.1964), 382 S.W.2d 116, W.R.; State v. Dickson (Tex.Civ.App.1966), 401 S.W.2d 361, W.R. N.R.E. As to the waiver of the objection, see 56 Tex.Jur.2d, 499, Sec. 158.

Appellants raised several points of error because the trial judge refused to strike the testimony of the witness Snider, without giving any particular reason therefor, except to say the testimony gave an improper element of damages. Appellants also raise points of error on the jury verdict and judgment of the trial court because they say the verdict and judgment are contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust; and, no evidence. Appellants also take the position the evidence offered by them, which the jury did not believe, actually fixes the amount of the damage. Appellants also take the position that $4,500.00 is a duplication of damages.

■ After the witness Snider had left the stand, after first testifying in the case, it was noticed that he had made a mistake in the mathematical calculations in his testimony. He was recalled to the stand and he testified to the right calculations. The jury believed him. We are bound thereby.

■ This opinion is too long. If we were to point out the various calculations that were made, this opinion would be extremely long. All of the witnesses, for appellants and appellees, used the same forms, interpretations and processes in arriving at their opinions. The jury reached its opinion based on the evidence produced by the appellees. There is some evidence to support the jury's findings; and, they are *not* contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

■ No objections were leveled at the manner of submitting the issues to the jury. The special issues followed the rule suggested in the Carpenter case, supra. A larger market value was placed on the severed tract of land that was being taken because it was fronting on US Highway #59. Such facts are self evident that a willing buyer would pay more per square foot of the land fronting on the highway, and a willing seller would demand more per square foot for one-third of a lot fronting on a highway, than each would pay or demand per square foot for the whole lot 180 x 150 feet. The part taken was 180 x 50 feet. Such appraisal by an expert witness is nothing more than common knowledge. Any ordinary person would know such to be a fact. Such fact is self-evident.

■ The motions to strike the testimony of Mr. Snider were entirely too vague and indefinite. Appellants should have set out the exact testimony which they sought to have withdrawn. Travelers Ins. Co. v. Hunter (1902) 30 Tex.Civ.App. 489, 70 S.W. 798, E.R.; Guadalupe Valley Electric Co-op, Inc. v. Towns (Tex.Civ.App.1965), 397 S.W.2d 496; St. Louis B. & M. R. Co. v. Fielder (Tex.Civ.App.1914), 163 S.W. 606, E.R.; 56 Tex.Jur.2d, 520, Sec. 176.

If it was error to permit the income from the bulk wholesale warehouses in evidence, it was not reversible error. Rule 434, Texas Rules of Civil Procedure. The evidence is sufficient to support the jury verdict without this evidence.

All the points are overruled. The judgment is affirmed.

CHADICK, C. J., did not participate in the consideration and disposition of the appeal.